

1994 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

12-21-1994

# Torre v. Casio, Inc.

Precedential or Non-Precedential:

Docket 94-7242

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_1994

Recommended Citation

"Torre v. Casio, Inc." (1994). *1994 Decisions.* Paper 225.
http://digitalcommons.law.villanova.edu/thirdcircuit_1994/225

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova University School of Law Digital Repository. It has been accepted for inclusion in 1994 Decisions by an authorized administrator of Villanova University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

———————

No. 94-5143

———————


GABRIEL TORRE

Appellant,

vs.

CASIO, INC.

Appellee.


———————


APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

(D.C. Civil No. 92-cv-01536)

———————


ARGUED SEPTEMBER 14, 1994

BEFORE:  STAPLETON, LEWIS and ALARCON,[*] Circuit Judges.

(Filed December 21, 1994)

———————


———————————————

[*]    Honorable Arthur A. Alarcon, United States Circuit Judge for
the Ninth Circuit Court of Appeals, sitting by designation.

Donato J. Battista (ARGUED)
Larry M. Cole
Cole & Cole
90 Court House Place
P.O. Box 8158
Jersey City, NJ  07308

       Attorneys for Appellant


Michael G. Shannon (ARGUED)
Phillips, Lytle, Hitchcock, Blaine & Huber
437 Madison Avenue
New York, NY  10022

       Attorney for Appellee

_____

OPINION OF THE COURT
_____


LEWIS, Circuit Judge.

In this case, we address the standard that must be applied at summary judgment to a plaintiff's claims of discrimination under the Age Discrimination in Employment Act, 29 U.S.C. § 621 et seq. (the "ADEA").  Because we find that the district court erred in granting summary judgment to the appellee, Casio, Inc. ("Casio"), we will reverse and remand for trial.

## I.

The dispute in this case involves Casio's transfer and termination of Gabriel Torre during the period March through June, 1990. Because this case is before us upon grant of a summary judgment, we will explore the facts in evidence in some depth below. The following sketch, however, provides the context for this dispute.

### A.

Torre was just shy of his 52nd birthday when he was hired by Casio, an electronics company, in January 1983, as a regional sales manager ("RSM") in Casio's consumer products division. He left Casio in early 1985, but when he found that his new job required him to travel more than he desired, he returned to Casio in August 1985, with full seniority rights. Shortly after his rehire, Torre was transferred and became RSM in Casio's audio/visual division ("AVD") for the eastern sales region, with responsibility for the East Coast of the United States.

In November 1987, Gary Hand became general manager-AVD and, shortly thereafter, vice-president-AVD. In both positions he was Torre's direct supervisor, and he remained so until April 1989. At that point Barry Collins became national sales manager-AVD, a position subordinate to Hand; as such, Collins became the immediate supervisor of Torre and two other RSMs in the audio/visual division, Mark Horowitz (age 40 in 1989) and Al Olsberg (age 37 in 1989).

Torre alleges that Hand caused him numerous problems and contends that Hand was driven by a desire to replace Torre with a younger manager. Torre contends that Hand's alleged animus, evidence of which we will discuss below, ultimately led Casio on April 1, 1990, to transfer Torre, as a "subterfuge," to the dead-end position of "product marketing manager," from which he could be fired at a more propitious -- and seemingly innocent -- moment. That time allegedly came on May 6, 1990, when Casio notified Torre that he would be terminated as part of a reduction in force.

Casio suggests a different story. Casio contends that its senior management, including the company's president, John McDonald, and executive vice-president for planning, Eisei Nakagaki, came to believe that Torre should be fired after his name repeatedly showed up on management's "problem" list. In particular, management had come to believe that Torre was lazy and unwilling to undertake the travel necessary to service his region. Nakagaki twice instructed Collins to fire Torre, but Casio contends that, rather than doing as he was told, Collins spoke to Connie Herrel, the company's administrative vice-president, whose duties included, among other things, human resources and legal affairs. Collins told Herrel that Torre would sue for age discrimination if he was terminated, and Herrel said that she would take care of the problem.

Casio further contends that, in order to save Torre from termination and avoid litigation expenses, Herrel designed the new product marketing manager position by taking advantage of

certain personnel vacancies and combining responsibilities to create a new position which would permit Torre to stay on and continue to have significant duties. The new position, Casio argues, satisfied both Casio and Torre: it took Torre out of sales, where his performance had been criticized, and put him in a position that took advantage of his experience, paid him the same amount of money, and required less travel.

Casio notes that it was experiencing economic problems in 1989 and that the business downturn continued through 1990. As a result, the company was forced to reduce its labor force and terminate certain West Coast operations. In the midst of this economic squeeze, Casio contends, one of its competitors, Zenith Corporation, filed charges with the United States Department of Commerce alleging that Casio had violated anti-dumping regulations. The Commerce Department decided to initiate formal administrative review of the charges in mid-April 1990.

According to Casio, the Commerce Department investigation threw the company into turmoil, forcing it to reduce expenses and build reserves. Thus, Casio contends, senior management -- specifically McDonald, Nakagaki, and Peter Owada, Casio's executive vice-president for finance -- met to carry out a directive from Casio's parent company in Japan to pare all unnecessary expenses. Part of that exercise included reviewing the Casio organizational chart with only one criterion in mind: can Casio live without this person? Casio contends that Torre failed that test, and was terminated as a result.

The district court found that, during the period January through June 1990, Casio discharged 26 employees as part of a reduction in force. Of those discharged, 19 were under the age of 40. Only Torre, at 59, was over 50. Between April 1990 and October 1991, the total number of Casio employees declined from 258 to 209.

Since Torre's termination, Casio notes, no one has filled the position of product marketing manager-AVD. Also, from the time Torre was transferred to the product marketing manager position through 1992, never again had more than two RSMs in the audio-visual division.

B.

After his termination, Torre brought a claim of age discrimination before the Equal Employment Opportunity Commission ("EEOC"), but the EEOC rejected the claim after Casio explained that it had terminated Torre due to continued poor market conditions. Thus, Torre brought this suit, alleging age discrimination in violation of the ADEA as well as state common law wrongful discharge. Casio moved for summary judgment, and the district court granted the motion on a number of grounds: (1) there was no direct evidence that discrimination had motivated either the transfer or the termination; (2) Torre had failed to present a prima facie case under McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973), because he failed to demonstrate that he had been replaced; and (3) Casio had introduced evidence that its reasons for transferring and terminating Torre were legitimate and nondiscriminatory, and

Torre had failed to introduce any evidence that the reasons proffered were pretextual and that the real reason for the transfer and termination were discriminatory.[1] Torre appeals. The district court had jurisdiction over this case under 29 U.S.C. § 623(a) and 28 U.S.C. § 1331. We have jurisdiction under 28 U.S.C. § 1291.

## II.

### A.

Section 623(a)(1) of Title 29 of the United States Code provides that "[i]t shall be unlawful for an employer . . . to fail or refuse to hire or to discharge any individual or otherwise discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's age." 29 U.S.C. § 623(a)(1). A plaintiff may demonstrate age discrimination under this portion of the ADEA by either direct or indirect evidence. "`Direct evidence of discrimination would be evidence which, if believed, would prove the existence of the fact [in issue] without inference or presumption.'" Earley v. Champion Int'l Corp., 907 F.2d 1077, 1081 (11th Cir. 1990), quoting and adding emphasis to Carter v. City of Miami, 870 F.2d 578, 581-82 (11th Cir. 1989).[2]

---

[1]. The district court did not specifically address Torre's state law claims in its opinion, but its order dismissed Torre's complaint in its entirety.

[2]. An example of evidence that would be considered "direct" is found in Trans World Airlines, Inc. v. Thurston, 469 U.S. 111 (1985). In TWA, former airline captains showed that an airline's policy allowed those disqualified from continuing as a captain for any reason other than age to transfer automatically to the position of flight engineer, but required age-disqualified

However, evidence is not direct where the trier of fact must
_infer_ the discrimination on the basis of age from an employer's
remarks. Perry v. Prudential-Bache Securities, Inc., 738 F.
Supp. 843, 851 (D. N.J. 1989), aff'd without opinion, 904 F.2d
696 (3d Cir.), cert. denied, 498 U.S. 958 (1990).[3]

Torre does not contend that he has presented a direct
evidence case of age discrimination.[4] Rather, he urges his claim
under the shifting-burden analysis of McDonnell Douglas Corp. v.
Green, 411 U.S. 792 (1973). Appellant's Br. at 20. (As we noted
in McKenna v. Pacific Rail Service, 32 F.3d 820 (3d Cir. 1994),
although McDonnell Douglas was itself a race discrimination suit
under Title VII of the Civil Rights Act of 1964, 42 U.S.C. §
2000e, its shifting-burden analysis is applicable to age
discrimination claims, as well. McKenna, 32 F.3d at 825 n.3.)

(..continued)
captains to bid for engineer vacancies or retire if no vacancies
occurred prior to their 60th birthdays. Id. at 121. This scheme
directly demonstrated TWA's disparate treatment on the basis of
age.

[3]. When direct evidence is offered to prove that an employer
discriminated, the shifting-burden analysis of McDonnell Douglas
Corp. v. Green, 411 U.S. 792 (1973) (see text immediately
following this note), is inapplicable and the case proceeds as an
ordinary civil suit. TWA, 469 U.S. at 121; Gavalik v.
Continental Can Co., 812 F.2d 834, 853 (3d Cir. 1987).

[4]. Because Torre had not clearly stated his position at
summary judgment, the district court first evaluated Torre's
claim as a direct evidence case and properly concluded that there
was no direct evidence that discriminatory motives caused Casio
to transfer or fire Torre. Torre's counsel at oral argument
effectively conceded that Torre has no direct evidence, but
argued that certain episodes described in the record create a
reasonable inference of discriminatory animus. We address those
episodes _infra_ p. 20.

"Under the familiar McDonnell Douglas shifting-burden analysis applicable to federal employment discrimination cases involving indirect proof of discrimination, the plaintiff bears the burden of proving a relatively simple prima facie case, which the employer must rebut by articulating a legitimate, non-discriminatory reason for its actions." McKenna, 32 F.3d at 825. Once the employer provides one or more justifications for its decision, the presumption of age discrimination created by the plaintiff's prima facie case is dispelled, and the plaintiff must demonstrate that the employer's proffered reasons are pretextual.

As we recently noted in Fuentes v. Perskie, 32 F.3d 759 (3d Cir. 1994), "[a]t trial, the plaintiff [in a discrimination case] must convince the factfinder `both that the [employer's proffered] reason was false, and that discrimination was the real reason'" for the decision about which the plaintiff complains. Id. at 763, quoting St. Mary's Honor Ctr. v. Hicks, 113 S. Ct. 2742, 2752 (1993). However, to survive summary judgment, a plaintiff need not go so far. At that preliminary stage, a plaintiff may prevail "by either (i) discrediting the [employer's] proffered reasons, either circumstantially or directly, or (ii) adducing evidence, whether circumstantial or direct, that discrimination was more likely than not a motivating or determinative cause of the adverse employment action." Fuentes, 32 F.2d at 764.

B.

Two issues are presented on this appeal, both of which flow naturally from the shifting-burden analysis: (1) did the existence of genuine issues of material fact preclude summary judgment on Torre's claim that he made out a prima facie case of discrimination by indirect evidence? (2) if Torre made out a prima facie case, did he also demonstrate that there were genuine issues of material fact in dispute concerning whether Casio's proffered reasons for transferring and then terminating Torre were pretextual or whether age discrimination actually motivated those decisions?[5] We explore these questions below.

On appeal from a summary judgment, we address the case as if we were the district court -- that is, we exercise plenary review of both facts and law. Additionally, in evaluating a motion for summary judgment, we must look at the record in the light most favorable to the nonmovant, giving that party the

---

[5]. Casio had also contended that summary judgment should be affirmed on the alternative ground that Torre had breached his employment agreement because he was moonlighting while employed by Casio. Casio argued that it would have fired Torre had it known of his second job, and urged us to apply the "after-acquired evidence" rule pioneered by certain of our sister circuits to bar Torre's recovery here. See Summers v. State Farm Mut. Auto. Ins. Co., 864 F.2d 700 (10th Cir. 1988); McKennon v. Nashville Banner Publishing Co., 9 F.3d 539 (6th Cir. 1993), cert. granted, 114 S. Ct. 2099 (1994). However, Casio conceded at oral argument that its claim was barred by Mardell v. Harleyville Life Ins. Co., 31 F.3d 1221 (3d Cir. 1994), in which we found that although after-acquired evidence might have some relevance at the remedy stage, it cannot be used to insulate an employer from liability.

benefit of all reasonable inferences derived from the evidence.

Hankins v. Temple University, 829 F.2d 437, 440 (3d Cir. 1987).

1.

In evaluating Torre's prima facie case, the district court purported to follow our statement in Gray v. York Newspapers, Inc., 957 F.2d 1070, 1078 (3d Cir. 1992), that

> [i]n the absence of direct evidence, a plaintiff may establish a prima facie case by demonstrating by a preponderance of the evidence that he or she (1) belongs to a protected class, i.e. is at least 40 years of age; (2) was qualified for the position; (3) was dismissed despite being qualified; and (4) ultimately was replaced by a person sufficiently younger to permit an inference of age discrimination.

The court noted that Casio did not contest the first three prongs of Gray, but explained that Torre "ha[d] stipulated that he was not replaced as RSM-AVD after he was transferred and that Casio continued to operate with only two RSM's and that he was not replaced as Product Marketing Manager-AVD after he was terminated, and ha[d] conceded that that position was eliminated in the reduction in force."  Op. at 12-13 (footnote omitted). Thus, the court concluded, "[i]n a nutshell, plaintiff has not established a prima facie case of discrimination, and that failure should be game, set, and match insofar as Casio's motion for summary judgment is concerned."  Id. at 13.

We disagree with the district court's analysis.  As we explained in Massarsky v. General Motors Corp., 706 F.2d 111 (3d Cir. 1983), "the nature of the required showing" to establish a prima facie case of disparate treatment by indirect evidence

"depends on the circumstances of the case." <u>Massarsky</u>, 706 F.2d at 118 n.13, citing <u>McDonnell Douglas</u>, 411 U.S. at 802 n.13, and <u>Teamsters v. United States</u>, 431 U.S. 324, 358 (1977). While we noted in <u>Gray</u> that an ADEA plaintiff <u>may</u> establish his or her <u>prima facie</u> case by meeting the four criteria announced there, we did not conclude that those elements were inflexible. Indeed, <u>Gray</u> grounded its choice of those elements upon <u>Billet v. CIGNA Corp.</u>, 940 F.2d 812, 816 n.3 (3d Cir. 1991), <u>Healy v. New York Life Ins. Co.</u>, 860 F.2d 1209, 1214 (3d Cir. 1988), and <u>Chipollini v. Spencer Gifts, Inc.</u>, 814 F.2d 893, 897 (3d Cir. 1987) (in banc). While <u>Chipollini</u> stated that a plaintiff may prove his or case by demonstrating the four elements listed in <u>Gray</u>, both <u>Billet</u> and <u>Healy</u> specifically noted that the fourth element must be relaxed in certain circumstances, as when there is a reduction in force. See <u>Billet</u>, 940 F.2d at 816 n.3; <u>Healy</u>, 860 F.2d at 1214 n.1.[6]

Here, reformulation of the fourth element of <u>Gray</u> was appropriate. At the time Torre was transferred and then discharged, the two other RSM-AVD's, Olsberg and Horowitz -- aged 38 and 41, respectively -- were retained in their positions.[7]

_____

[6]. We are not troubled by our statement in <u>Siegel v. Alpha Wine Corp.</u>, 894 F.2d 50, 55 (3d Cir. 1990), that a plaintiff "must" prove the four elements later discussed in <u>Gray</u>. This statement did not purport to create an inflexible rule. First, our later opinion in <u>Gray</u> undercuts such a reading, since it speaks in the more flexible and permissive "may" rather than the mandatory "must." Additionally, reading <u>Siegel</u> to create a rigid <u>prima facie</u> burden would be inconsistent with Supreme Court authority requiring a contextual approach.

[7]. The district court wondered whether Torre could complain about his transfer as an adverse job action at all, since "1)

When subsequent events made it economically impossible to hire a new RSM, Olsberg subsumed Torre's responsibilities.  J.A. 297.[8]

Additionally, when Torre was terminated in the reduction in

(..continued)
plaintiff's resume describes the position to which he was transferred as `National Product and Marketing Manager', seemingly more encompassing than the position of RSM; 2) plaintiff experienced no reduction in pay; and 3) plaintiff was no longer required to travel."  Op. at 12.  It is clear, however, that a transfer, even without loss of pay or benefits, may, in some circumstances, constitute an adverse job action.  Collins v. Illinois, 830 F.2d 692, 702-04 & 702 n.7 (7th Cir. 1987) (collecting cases).  Torre has created a material fact issue concerning whether he was transferred from his RSM position to a dead-end job that had effectively been eliminated before he was transferred to it.  See infra pp. 22-23.  Furthermore, Torre has also created a material fact issue concerning whether his transfer and termination were part and parcel of the same allegedly discriminatory scheme.  See infra p. 18-20.

[8].    Casio acknowledges that it began trying to fill Torre's RSM position and in fact advertised the opening.  Casio ceased such efforts only when it became economically unsound to hire a replacement.  Other circuits have routinely found such action to be sufficient to complete a prima facie case.  E.g., Lipsett v. University of Puerto Rico, 864 F.2d 881, 899 (1st Cir. 1988) (fourth element of prima facie case satisfied by showing "that the employer sought someone to perform the same work after [the plaintiff] left"); Meiri v. Dacon, 759 F.2d 989, 996 (2d Cir. 1985) (provided the employer sought a replacement for the discharged employee, "[t]he fact that [an employee's former] position was ultimately eliminated is of little relevance and should not sound a death knell to [a plaintiff's discrimination] claim"); Rollins v. TechSouth, Inc., 833 F.2d 1525, 1528 (11th Cir. 1987) (fourth prong of prima facie case satisfied if employee proves that "employer subsequently replaced [the employee] or sought a replacement").  Given the facts discussed in the text, we need not decide whether mere advertisement for a replacement is sufficient to complete a prima facie case.  However, assuming (without deciding) that Torre was transferred and terminated because of age discrimination, it is difficult to believe that Congress would have intended to allow Casio to dismiss Torre for discriminatory reasons as long as subsequent events made it uneconomical to hire someone to fill the spot.

force, other, similarly-situated but younger employees were retained by Casio.[9]

Thus, younger people were not transferred when Torre was transferred, and younger people subsumed his duties. Furthermore, younger people were retained when Torre was terminated. These facts suffice to complete Torre's prima facie case: given Casio's concession concerning the other three Gray elements, if Torre's proof stopped with the facts above, he would carry his initial burden of "offering evidence that an employment decision was based on a discriminatory criterion illegal under the Act." Teamsters, 431 U.S. at 358. The inference of age discrimination may not be overpowering, but we cannot say that, as a matter of law, it is insufficient.

2.

Having found that Torre stated a prima facie case of age discrimination, we must turn to whether he also demonstrated that there were one or more material issues of fact in dispute concerning whether Casio's proffered reasons for transferring and terminating him were pretextual or whether discrimination actually motivated those decisions. Although the district court had found that Torre failed to present a prima facie case, it too reached the second stage of the shifting-burden analysis and concluded that Torre had failed to rebut Casio's legitimate

---

[9]. Specifically, when Olsberg stated his intention to resign on May 22, 1990, Casio chose to replace him with Richard Luberto, age 28. On or about June 8, 1990, Horowitz resigned, and was replaced by William Clark, age 41. Luberto was subsequently discharged in December 1990. J.A. 23-24, 120-21.

business justifications.  We attribute the district court's holding, in part, to the fact that it ruled in this case prior to our decision in Fuentes.  Thus, the district court applied the wrong legal standard:  it held that "[i]n the context of a motion for summary judgment, plaintiff must produce sufficient evidence from which a rational factfinder could conclude that Casio's reasons are unworthy of credence and that the real motivation behind the transfer and/or termination was discrimination based on plaintiff's age."  Op. at 14-15.  As we noted earlier, under Fuentes, that is not so.  Instead, at summary judgment a plaintiff need only present evidence from which a reasonable factfinder could conclude either that the defendant's proffered justifications are not worthy of credence or that the real reason for the decision was discrimination.  Fuentes, 32 F.3d at 764.

Although the district court's failure to anticipate our decision in Fuentes influenced its analysis, the district court also resolved a host of material fact issues in concluding that Torre had failed to rebut Casio's proffered explanations for the transfer and termination.  The district court essentially accepted Casio's explanations in their entirety and failed to address a significant amount of the evidence presented by Torre. We now turn to Casio's justifications and conclude that Torre has raised material fact issues that required denial of summary judgment.

As we noted earlier (supra pp. 4-5), Casio offers innocent explanations for its decisions.  According to Casio, John McDonald and Eisei Nakagaki wanted Torre fired because his

name kept showing up on management's problem list. On two occasions, Nakagaki instructed Collins to fire Torre. Rather than doing so, however, Collins went to Herrel and told her that Torre would sue if he was fired. To save Torre his job and avoid legal costs associated with a suit, Herrel created a new position of product marketing manager and had Torre transferred to that position. The transfer, according to Casio, was not an adverse job action, but rather a way to satisfy all of the parties: Casio would not have Torre in a front-line sales position, where his performance had been criticized, but would still be able to benefit from his substantial experience in sales. Meanwhile, Torre would be paid essentially the same, would have substantial new duties, and would not have to travel. (The RSM position was a salary-plus-commission job, while the product marketing manager position was a straight salaried position, but Torre does not contest that his expected salary remained the same after he was transferred.)

Unfortunately, according to Casio, the company's financial picture worsened rapidly during the period surrounding Torre's transfer, in part because Zenith filed anti-dumping charges with the Commerce Department and the government decided to investigate. In an effort to cut costs, Casio claims its senior management, including McDonald and Nakagaki, instituted an age-neutral reduction in force. Torre, along with many other, younger employees, fell victim to unfortunate business necessity. Finally, Casio stresses, there is no allegation that McDonald and Nakagaki, the prime movers who caused the transfer and ultimately

made the decision to terminate, harbored any discriminatory animus towards Torre.

We agree with the district court that there is substantial support in the record for each step in Casio's explanation of the transfer and termination decisions.  There is unrefuted evidence that McDonald and Nakagaki were dissatisfied with Torre's performance and wanted him fired,[10] and there is testimony and documentary evidence supporting the other

---

[10].    Torre stated that he did not receive any complaints about his job performance while he was RSM-AVD and stated that he had the highest sales in audio and second highest in video among all regions during the period he was RSM-AVD.  Torre also submitted an affidavit from Collins stating that Torre "performed his duties in an exceptional manner."  J.A. 376.  However, Casio submitted with its summary judgment motion a number of memoranda that had been sent to Torre, each of which criticized one or more aspects of his performance.  Id. at 254, 261, 263.  Furthermore, McDonald stated in his affidavit that Torre's name came up often in management's review of problem areas.  McDonald also stated that management "came to feel that [Torre] was lazy and not trying," that he was reluctant to travel, and that he did not spend sufficient time with his customers and representatives.  Id. at 98.  McDonald also said that "[f]ollowing a number of meetings and having heard repeated problems with the performance of plaintiff's region and plaintiff's performance, especially in the area of not getting out to visit the accounts, Mr. Nakagaki, Mr. Owada and I agreed that plaintiff should be removed from his position."  Id. at 100.

On more than one occasion prior to March, 1990, Nakagaki told Collins to fire Torre because of his job performance.  J.A. 273.  In fact, in response to a Casio interrogatory, Torre conceded that "sometime during the fall of 1989 Eisei Nakagaki told Barry Collins that Gabe Torre should be fired because he is not working and does not need the money.  Nakagaki further explained that anyone who played tennis as well as Gabe Torre could not be devoting his time to his job."  Id. at 275.  Additionally, according to Collins, Nakagaki criticized Torre's performance before Collins on many occasions.  E.g., id. at 271-72.

contentions, as well. Indeed, Casio's explanation for the transfer and termination may ultimately prevail.

That, however, is not the point. Rather, looking at the facts in the light most favorable to Torre and drawing all reasonable inferences in his favor, the evidence at summary judgment demonstrated that he could persuade a reasonable jury that Casio's proffered reasons for the transfer and termination were not worthy of credence.

First, Torre notes that there was deposition testimony from which a jury could reasonably conclude that Hand was one of the decisionmakers involved in the decisions to transfer and terminate. John McDonald stated in his affidavit that Hand "did not make the decision to transfer plaintiff and he did not make the decision as to which employees would be included in the reduction in force." J.A. 127. However, Collins testified that when he met with Hand to discuss Torre's transfer, Hand "sat down and told me what he was doing with [Torre]." J.A. 252 (emphasis added). Collins said that Hand "was going to move -- I can't tell you exactly what he said. He was going to move Gabe inside and to take over the marketing duties. I don't remember his exact words." Id. Collins then stated that Hand "said that he wanted to put [Torre] in a box," and "went on to say that he wanted to put [Torre] under a microscope, [to] wrap him so tight that he would have to screw up." Id.

Collins followed these statements by saying that he "also knew that [the] decision [to transfer Torre] came [from]

above [Hand]."  J.A. 252.  When pressed on this point, however, he stated that

> [a]ny time you move personnel inside of Casio, there is a consensus of opinion.  It is not one individual's decision, unless that individual may be John McDonald, Mr. Nakagaki.  Ms. Herrel certainly has that ability.  A few people have that ability, but it had to be a consensus of opinion to make a move like that.  Gary is certainly not going to consult down, he is going to consult up.

Id.

Collins' testimony, if credited, would undercut Casio's explanation that McDonald and Nakagaki were the sole instigators of Torre's transfer.  A reasonable jury could conclude instead that Collins' testimony established that Hand was the mastermind because he said as much to Collins.[11]  Additionally, although Collins testified that he knew that the ultimate decision came from above Hand, his clarification of this comment indicates that he did not, in fact, know that Hand did not make the decision, and in any event Collins' testimony would be consistent with the inference that Hand was the driving force behind the decision, "consulting up" with McDonald and Nakagaki.[12]

[11].  Hand's deposition testimony was ambiguous on this point: he stated that the transfer decision "was discussed with and was advised to me what the company wanted, that thought, and asked my idea of what I thought about moving [Torre] to that position.  I thought it was a great idea."  J.A. 307.  Hand also acknowledged that it was "possible" that he had been involved in discussions leading to Torre's transfer.  Id. at 592.

[12].  Indeed, Herrel testified that when she spoke with McDonald about the transfer, she told him that both Nakagaki and Hand wanted to terminate Torre.  J.A. 612.  This testimony is inconsistent with McDonald's testimony that Hand was not involved in the process.

Collins' testimony also contradicts Casio's contention that, in the words of McDonald, "[a]s of April 1, 1990," when Torre was transferred, "Casio had absolutely no intention of discharging plaintiff." J.A. 110. According to what Hand told Collins, Torre's transfer was designed to be the first stage of his ultimate discharge.

Hand's involvement is material because a jury could reasonably conclude that he indeed harbored age-related animus towards Torre. Torre presented evidence that, when Hand first became Torre's supervisor in 1987, he sought to replace Torre with a younger manager. According to letters and an affidavit of a recruiter, Jerry Joseph, offered by Torre at summary judgment, Hand told Joseph that one candidate suggested by Joseph was unacceptable because he was too old, and that he did not want to fill Torre's position with anyone who was over age 35. J.A. 662-71.

In September of 1989,[13] Torre received a message on his answering machine to the effect that Hand needed a report from Torre by the next day. During the course of the message, Hand stated, "did you forget or are you getting too old, you senile bastard?" J.A. 374.[14]

---

[13]. The parties disagree about when -- and indeed whether -- this event occurred. The affidavits and deposition testimony offer conflicting reports. Thus, for purposes of summary judgment, we resolve this issue in Torre's favor.

[14]. Hand did not recall having made the comment. J.A. 413.

Certainly, these pieces of evidence do not establish that age discrimination motivated the decision to transfer or terminate Torre. However, if credited by a jury, these episodes could reasonably lead it to infer that Hand exhibited animus towards Torre because of his age and that he wanted to replace him with a younger manager. There is also evidence from which a jury could reasonably conclude that Casio was aware of Hand's predilection for younger managers.[15]

Aside from presenting evidence that Hand was a decisionmaker in the transfer and termination, Torre also identified other potential inconsistencies in Casio's explanation about the transfer. First, Torre contends that Casio has presented an incoherent picture of who was involved in creating and defining the product marketing manager position to which he was transferred. Herrel testified that she was responsible for coming up with the new position and defining its duties, and testified that she did so in late March 1990. J.A. 613. Yet Torre notes that Hand signed a personnel requisition form on March 15, 1990, requesting Torre to be transferred to the position of "product manager." J.A. 593, 607, 655. Furthermore, sometime in March, Hand notified Torre that he would be transferred (J.A. 20) and, in early April, Hand sent Torre a memorandum outlining his duties as product marketing manager (id.

---

[15]. Specifically, Herrel testified at her deposition that she was assigned the task of responding to the letters from Jerry Joseph in 1988 which mentioned Hand's statements about wanting younger candidates for Torre's position. J.A. 615-16.

at 310-11).  Thus, a jury could reasonably conclude that Hand played a significant role in developing Torre's new post.  It could also conclude that Herrel's testimony attempted to minimize Hand's role in the transfer.

Torre also submitted evidence questioning whether the "product marketing manager" position was, in fact, a new position at all.  In essence, Torre's theory is that he was transferred to a position that had been eliminated in January 1990.  Torre notes that, in January 1990, Casio had terminated Roy Goldschmidt from his position as product manager for AVD.  At that time, Hand had explained to Goldschmidt that his position was being eliminated because projections indicated that there would not be enough sales volume to support the position.  J.A. 19.  Yet when Hand signed the personnel requisition for Torre's new position, he called that position "product manager" -- the same name as the position eliminated two months earlier.  Id. at 593, 607, 655.  Torre also notes that administrative documents at Casio continued to refer to his new position as "product manager" up through his termination (id. at 649, 653), and that even documents created after his termination referred to the position as "product manager" (id. at 620-22).

Torre also questions whether his new duties were anything more than Goldschmidt's old duties.  Torre submitted an affidavit from Goldschmidt himself, who said that he performed all but one of the twelve duties outlined for Torre by Hand in his April 6, 1990 memorandum describing Torre's new position.  J.A. 699-702.  Torre also notes that Casio provided conflicting

explanations of whose jobs were being combined into the position created for Torre, and what the job requirements were. Casio told the EEOC that the new job combined Goldschmidt's duties with those of Maryann Giannitto, a marketing services employee who had been transferred in March 1990. J.A. 609-10. Herrel, however, testified at her deposition that she combined Goldschmidt's duties with the duties of marketing services employee Laurie Van Lenten, who had resigned in January 1990. Id. at 614.[16]

Turning to the decision to terminate, Torre points out that Casio's explanation for the cause of its reduction in force varied over time. In a letter to the EEOC defending against Torre's charges, Casio stated that Torre's termination was part of an "across the board reduction in force" caused by "a continued poor market." J.A. 660. Before the district court (and again on appeal), however, Casio relied instead on McDonald's affidavit, in which he stated that Torre's termination was caused by the Commerce Department's decision to initiate the anti-dumping investigation. See Appellee's Br. at 8 (citing J.A. 115).

3.

We do not find that the facts just discussed necessarily demonstrate that Casio's explanation for its transfer and termination of Torre are unworthy of credence. However, Torre has provided sufficient evidence upon which a reasonable

---

[16]. Both of these explanations are inconsistent with Casio's explanation in its brief on appeal, in which it contends that the position combined all three posts. Appellee's Br. at 6.

jury could conclude that, instead of trying to save Torre, Casio was setting him up for termination when it transferred him to a job that had already been eliminated once because it was surplusage. A jury could reasonably conclude that Casio's subsequent explanations for its behavior were an effort to explain away Hand's role in the decision to transfer. From the evidence presented at summary judgment, it would not be unreasonable for the jury to conclude that Torre was not transferred in order to save him a job, as Casio contends, but rather to warehouse him. If the jury does not believe Casio's business justifications, it will be left with Torre's prima facie case and, perhaps, the conclusion that Hand harbored age-related animus that manifested itself in the decision to transfer Torre to a dead-end position from which he was terminated shortly thereafter.

Ultimately, of course, Torre has to prove that, more likely than not, Casio terminated him because of his age. The case likely will turn on the substance and credibility of the trial testimony of McDonald, Herrel, Hand, and Collins. Because we cannot predict the outcome of that testimony at trial, and because we recognize that juries are particularly suited to make such credibility determinations, we believe that summary judgment was inappropriate in this case.

III.

For the foregoing reasons, we will reverse the district court's grant of summary judgment and remand for further proceedings.