

1998 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

11-27-1998

# DiIenno v. Goodwill Ind

Precedential or Non-Precedential:

Docket 98-1024

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_1998

Recommended Citation

"DiIenno v. Goodwill Ind" (1998). *1998 Decisions.* Paper 272.
http://digitalcommons.law.villanova.edu/thirdcircuit_1998/272

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova
University School of Law Digital Repository. It has been accepted for inclusion in 1998 Decisions by an authorized administrator of Villanova
University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

Filed November 27, 1998

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

No. 98-1024

CHRISTINE DiIENNO and DAVID DiIENNO,
        Appellants

v.

GOODWILL INDUSTRIES OF MID-EASTERN
PENNSYLVANIA and DREW HOSELEY
        Appellees

ON APPEAL FROM THE
UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA
(D.C. Civil No. 96-8053)

Argued: October 6, 1998

Before: BECKER, Chief Judge, NYGAARD and NOONAN*
Circuit Judges

(Filed November 27, 1998)

        William J. Fries, Esquire (ARGUED)
        Gross, McGinley, LaBarre & Eaton
        33 South 7th Street
        P.O. Box 4060
        Allentown, Pennsylvania 18105
        Attorney for Appellants

_____

* John T. Noonan, Jr., Circuit Judge of the United States Court of
Appeals for the Ninth Circuit, sitting by designation.

          Lloyd G. Parry, Esquire (ARGUED)
          Davis, Riter, Parry & Hartman
          1525 Locust Sreet, 14th Floor
          Philadelphia, Pennsylvania 19102
          Attorney for Appellees

OPINION OF THE COURT

NOONAN, Circuit Judge.

Christine DiIenno, the plaintiff in this suit for unlawful retaliation, was hired in November 1992 by Goodwill Industries of Mid-Eastern Pennsylvania (Goodwill) for its Trexlertown store. The formal job description was tagger-processor but in the Trexlertown store the processor sorted out the bags in which the donated clothes were dumped; taggers identified the brands and priced the clothes. DiIenno worked as a tagger. In November 1994, two years after she had started, she was promoted to acting shift supervisor; one perk of the job was possession of the keys to the store, enabling her to start her work early, a privilege she relished.

In late November Drew Hosely was made manager of the store. Soon after his appointment Hosely began asking DiIenno personal questions, including questions about the state of her marriage. She told him the questions were none of his business. On December 5, 1994, over her objection, he required her to pick him up when he dropped off his car for repairs. On December 16, in the store office, he declared his love for her. She asked him to leave. He threw things on the desk and told her she would be demoted to doing processing. He then left. In tears she reported the incident to Jane Blanchard, secretary at the Shillington plant, who regularly called in for the store's daily figures. Blanchard had previously told her that she had been harassed by Hosely.

On December 22, 1994 DiIenno met with Sandra O'Flaherty, Goodwill's sales manager, and Susan Gabriel, Goodwill's human resource director. O'Flaherty reacted with anger to DiIenno's charge against Hosely. She

2

informed DiIenno that she was being non-supportive of management (a ground for dismissal) and that she would have to process clothing. DiIenno's keys were taken from her. She was forbidden to speak on the phone to Blanchard, and her calls to Blanchard were now routed to others. Hosely himself was removed from his position at the store, and O'Flaherty took over the responsibilities of manager.

At the December 22, meeting DiIenno had explained to O'Flaherty that she was "phobic of critters -- dead or alive that we found in donation bags -- mice, insects, bugs." She therefore could not and would not work as a processor; she had been hired as a tagger. On January 25, 1995 DiIenno received a memo from management directing her to produce a medical excuse or to begin processing clothes. On February 1, 1995, her treating physician provided a letter documenting her phobia. On February 6, she was directed by her immediate supervisor, Steve Brauner, to go through the bags. She attempted to comply, broke down, trembling and crying, and left. She then took medical leave. She was informed that when she returned she would have to do processing.

The foregoing are the facts presented by the plaintiff in support of her claim that Goodwill violated 42 U.S.C. S 2000e-3(a) and in support of her appeal from summary judgment in favor of Goodwill. In summarizing these facts we do not determine their truth. We do conclude that, if true, they state a cause of action for retaliation. DiIenno did engage in activity protected by Title VII in protesting to management what she perceived as sexual harassment. She alleges that Goodwill took adverse employment action against her by assigning her to work Goodwill knew she could not perform. An apparent causal connection existed between her protest and Goodwill's response. All elements of the federal statutory tort were present. Nelson v. Upsala College, 51 F.3d 383, 386 (3d Cir. 1995).

To be clear, we hold that a transfer to a job that an employer knows an employee cannot do may constitute adverse employment action. We base our holding on the principle that what constitutes retaliation depends on what a person in the plaintiff's position would reasonably

3

understand. It is important to take a plaintiff's job-related attributes into account when determining whether a lateral transfer was an adverse employment action. An inability to do a particular job is job-related, unlike a desire to live in a certain city. See Serrano-Cruz v. DFI Puerto Rico, Inc., 109 F.3d 23, 26 (1st Cir. 1997) (setting an employee up to fail can be adverse action); Bernheim v. Litt, 79 F.3d 318, 325 (2d Cir. 1996) (reassignment to a job requiring a five-story climb could be retaliatory if the employer knew of the employee's difficulty climbing stairs); cf. Shafer v. Board of Public Education, 903 F.2d 243 (3d Cir. 1990) (holding that, when the school board knew that the plaintiff would quit if denied paternity leave, the denial constituted a constructive discharge).

The district court in granting summary judgment erred in treating the transfer from tagger to processor as not an adverse employment action. To move DiIenno from work she had done satisfactorily for over two years to work she was unable to do was an employment action that a reasonable jury could find adverse. The facts that her pay and benefits were not reduced and that Goodwill considered the jobs equivalent are not dispositive. A reasonable jury could find that Christine DiIenno's employment was substantially worsened.

Goodwill disputes that the transfer was punitive. O'Flaherty states that she merely brought more efficient use of personnel to the Trexlertown store. The disputed causal connection and the credibility of the proferred explanation are, of course, issues that a jury must resolve. Torre v. Casio, 42 F.3d 825, 831-833 (3d Cir. 1994). DiIenno has produced sufficient evidence for a reasonable jury to infer that what motivated Goodwill was retaliatory intent. See Fuentes v. Perskie, 32 F.3d 759, 764 (3d Cir. 1994).

As well, the following disputed issues of material fact must also be resolved at trial: (1) whether Goodwill assigned DiIenno to process in retaliation for her harassment complaint or whether management made a neutral decision to make everyone a tagger-processor; (2) whether Goodwill would have enforced the sorting requirement on DiIenno; that is, whether she was constructively discharged or whether she jumped the gun

4

by leaving before it was clear that she would be required to process.

The order of the district court will be reversed and the case remanded for further proceedings.

A True Copy:
Teste:

        Clerk of the United States Court of Appeals
        for the Third Circuit

5