

2003 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

4-30-2003

# Fallon v. Meissner

Precedential or Non-Precedential: Non-Precedential

Docket 02-1823

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_2003

Recommended Citation

"Fallon v. Meissner" (2003). *2003 Decisions.* Paper 602.
http://digitalcommons.law.villanova.edu/thirdcircuit_2003/602

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova
University School of Law Digital Repository. It has been accepted for inclusion in 2003 Decisions by an authorized administrator of Villanova
University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

NOT PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

No. 02-1823

JOSEPH R. FALLON,
                              Appellant

v.

DORIS MEISSNER, Commissioner,
Immigration and Naturalization Service,
Department of Justice;
JOHN ASHCROFT, ATTORNEY GENERAL

On Appeal from the United States District Court
for the Eastern District of Pennsylvania
D.C. Civil Action No. 00-cv-05258
(Honorable R. Barclay Surrick)

Submitted Pursuant to Third Circuit LAR 34.1(a)
January 9, 2003

Before: SCIRICA, BARRY and SMITH, Circuit Judges

(Filed April 30, 2003)

OPINION OF THE COURT

SCIRICA, *Circuit Judge*.

At issue is whether plaintiff suffered an "adverse employment action" for purposes of the Age Discrimination in Employment Act and Rehabilitation Act when his employer refused his requests for transfers to an equivalent job in other cities. We hold that, under the particular circumstances of this case, he has not.

I.

In January 1995, forty-eight-year-old plaintiff Joseph Fallon applied for a job as assistant district counsel for the Immigration and Naturalization Service in New York City. Assistant district counsels are trial attorneys who represent the INS in Immigration Court in removal actions and the like. The nature of the position is such that assistant district counsels perform substantially the same tasks in a number of cities around the country. At the time of his interview in 1995, Fallon lived in New England.[1] Fallon was offered, and he accepted, the New York position, where he began work on July 24, 1995.

Shortly before beginning work at the INS, Fallon moved to Northeast Philadelphia. He has commuted from there to his job in New York most days since then.

Fallon sought transfers to INS offices in a number of locations, including Philadelphia, Boston, and Vermont. In this court, Fallon focuses on his attempt to transfer to Philadelphia in July 1999.

---

[1]Fallon contends he expressed reservations about the expense of living in the New York area. He also contends that his interviewer told him transfers were common, so his prospects for moving to a similar position in a different city were good.

Each of Fallon's transfer requests was denied, including his application to the Philadelphia office, which sought "experienced INS attorneys." The vacancy he applied for was filled by Karen Fairlie, an attorney under the age of forty, and with no prior experience in immigration law. By contrast, Fallon had three to four years of such experience, and had received "excellent" performance reviews. Fallon contends he was never given an interview for the job.

Transfer decisions for assistant district counsels are made primarily by the receiving office, following consultation with the office from which the applicant would transfer. Accordingly, the Philadelphia office had primary responsibility for the rejection of Fallon's request to transfer there.

Fallon contends his superiors revealed prejudice towards him as an older worker. One INS official sent an e-mail expressing concern about the physical fitness of INS trial attorneys, stating, "I am particularly concerned that some of your older [trial attorneys] may not be able to meet the physical fitness standards and thus will be required to attend the month-long Physical Fitness Remedial Training Camp at Artesia." The e-mail then suggested that Fallon and one other attorney be placed on a physical fitness regimen, including the denial of elevator privileges. Fallon also contends defendants viewed him as disabled due to a recurring back problem.

The parties agree that Fallon's managers were aware of his long commute.

Fallon sued, alleging violations of the Age Discrimination in Employment Act, 29 U.S.C. § 621 *et seq.* ("ADEA"), the Americans with Disabilities Act, 42 U.S.C. § 12111 *et seq.* ("ADA"), and the Rehabilitation Act of 1973, 29 U.S.C. § 701 *et seq.*

The District Court granted defendants' motion for summary judgment on all counts. The court found that several of plaintiff's claims were barred by statutes of limitations. Fallon's claims that the failure to transfer him to Philadelphia constituted a violation of ADEA and the Rehabilitation Act remained. The District Court entered summary judgment on these counts because it found the transfer did not amount to an "adverse employment action"—a requirement for Fallon's theory under both statutes. Plaintiff appeals from this determination, which is the sole issue on appeal.[2]

## II.

The Age Discrimination in Employment Act[3] prohibits discrimination in employment against those over forty years of age on the basis of their age. 28 U.S.C. §§ 623(a), 631(a). Plaintiffs may establish this either by "direct evidence" of the employer's discriminatory reasons for acting against the plaintiff, *see Price Waterhouse v. Hopkins*, 490 U.S. 228 (1989), or by presenting "indirect" evidence from which discrimination can

---

[2]The District Court had federal question jurisdiction of Fallon's ADEA, ADA, and Rehabilitation Act claims under 28 U.S.C. § 1331. The District Court's final order dismissing all claims is subject to review by this court under 28 U.S.C. § 1291.

[3]Although plaintiff also claims violations of the ADA and the Rehabilitation Act, he focuses his discussion on age-related issues. Because our discussion of whether plaintiff suffered an "adverse employment action" applies equally in all cases, we will not further discuss the ADA and Rehabilitation Act.

be inferred. In the latter case, we adopt a version of the familiar framework first outlined in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973). Fallon has presented his case as an "indirect" one.

Under this framework, the plaintiff bears the original burden of establishing a prima facie case of discrimination. *Torre v. Casio, Inc.*, 42 F.3d 825, 829 (3d Cir. 1994). The employer then has the burden of presenting a legitimate, non-discriminatory reason for the complained-of action. The plaintiff may then show the employee's proffered explanation to be pretextual. *Id.* The plaintiff bears the ultimate burden of establishing discrimination at trial. To survive summary judgment, however, it is enough to (1) establish a prima facie case and (2) produce evidence sufficient to create a genuine issue of fact that either discredits the employer's proffered reasons for the action, or supports a finding that discrimination was the motivating reason for the action taken. *Id.* at 830.

A prima facie case is established by producing evidence of a set of circumstances under which it might be presumed—in the absence of further explanation by the employer—that a person has suffered employment discrimination. A plaintiff may establish such a case under ADEA by demonstrating by a preponderance of the evidence that he or she: (1) belongs to a protected class, *i.e.,* is at least forty years of age; (2) was qualified for the position; and (3) suffered a materially adverse employment decision. *Skerski v. Time Warner Cable Co.*, 257 F.3d 273, 278 (3d Cir. 2001). A plaintiff also

must generally provide evidence that younger employees received comparatively more favorable treatment. *See Torre*, 42 F.3d at 831.[4]

III.

Defendants do not dispute that Fallon was qualified, nor that he was over forty. And there is no dispute that the Philadelphia office hired a younger attorney for the position Fallon sought. The critical question is whether the denial of Fallon's requests for transfer to Philadelphia amounted to a "materially adverse employment decision."

Appellate courts have held that a "purely lateral transfer" does not, by itself, constitute an adverse employment action. *Brown v. Brody*, 199 F.3d 446, 455-57 (D.C. Cir. 1999) ("The clear trend of authority … is to hold that a purely lateral transfer, that is, a transfer that does not involve a demotion in form or substance, cannot rise to the level of a materially adverse employment action.") (internal quotations omitted); *Ledergerber v. Stangler*, 122 F.3d 1142, 1144 (8th Cir. 1997); *Williams v. Bristol-Meyers Squibb Co.*, 85 F.3d 270, 274 (7th Cir. 1996). On the other hand, to be actionable, a transfer need not always amount to change in position, or involve a loss of pay or benefits. We have held that a plaintiff might be able to meet this requirement for a prima facie case on a showing that the transfer was to a "dead-end job," even though it did not involve a loss of pay or

---

[4]Perhaps most commonly, this element is shown by establishing that a younger employee replaced a plaintiff who had been terminated, or received a position the plaintiff had been denied. But other comparisons may be sufficient, depending on the context, such as a showing that younger employees were not laid off in the course of a reduction in force, or were not transferred. *Torre*, 42 F.3d at 831.

benefits. *Torre*, 42 F.3d at 831 n.7. And a transfer to an "undesirable shift" that left the plaintiff with "none of the customary free time" he was accustomed to was found to be sufficient for a prima facie case. *Mondzelewski v. Pathmark Stores, Inc.*, 162 F.3d 778, 787 (3d Cir. 1998). In short, the material effects of a transfer or refusal to transfer may be significant.

The position Fallon sought in Philadelphia was the same as the one he held in New York: assistant district counsel. Fallon does not contend his pay and benefits would change, nor that his duties would be materially different. In fact, the duties are essentially identical. The sole basis for differentiation between the two jobs presented by Fallon in this court relate to his commute. The commuting costs incurred, Fallon argues, constitute the materially adverse consequences of his having been denied requested transfers.

But in order to amount to a materially adverse employment action in the sense relevant here, it must be adverse in the right way. In particular, it must not arise from the employee's individual preferences, *Brown*, 199 F.3d at 457, and must be "job-related" in the appropriate sense. *DiIenno v. Goodwill Inds.*, 162 F.3d 235, 236 (3d Cir. 1998). In *DiIenno*, we stated that a desire to live and work in a city other than the one in which one currently works is not "job-related." *Id.*

It is apparent that the benefit Fallon sought derives solely from his own choice, rather than from his employer's actions. The extent of one's commute depends as much on the location of one's home as it does on the location of one's work. And Fallon made

7

the decision—already knowing that he would be working in New York—to move from New England to Philadelphia, exposing him to the commute he now faces. Defendants do not have control over the distance and cost of his commute. Any consequences of defendants' decision not to transfer Fallon cannot fairly be traced to that decision, but are instead the result of Fallon's choice of residence.

The inference of age discrimination that Fallon seeks to draw lacks the necessary foundation. Though a younger employee was chosen to fill the Philadelphia vacancy, there is no basis for concluding that she was treated more favorably than Fallon. She received a job objectively equivalent to what Fallon already had. All we can say is that she got a job that Fallon wanted. But this is not the same as an inference that she was more favorably treated than Fallon, a conclusion for which there is no basis in the record. Thus, Fallon's having been denied a transfer together with Karen Fairlie's hire in the Philadelphia office do not allow an inference of discriminatory treatment. Consequently, Fallon has not met his evidentiary burden required to establish a prima facie case.

IV.

We hold that, under these facts, where the plaintiff is responsible for the choices determinative of the length of his commute, the failure of his employer to reduce that commute does not make the transfer denial an adverse employment action within the meaning of ADEA.

Accordingly, we will affirm the judgment of the District Court.

8

_____

TO THE CLERK:

Please file the foregoing opinion.


/s/ Anthony J. Scirica
Circuit Judge