

Villanova University School of Law Digital Repository

2008 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

10-8-2008

# Dowling v. Citizens Bank

Precedential or Non-Precedential: Non-Precedential

Docket No. 07-4054

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_2008

Recommended Citation

"Dowling v. Citizens Bank" (2008). *2008 Decisions.* Paper 392.
http://digitalcommons.law.villanova.edu/thirdcircuit_2008/392

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova
University School of Law Digital Repository. It has been accepted for inclusion in 2008 Decisions by an authorized administrator of Villanova
University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

NOT PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 07-4054
_____

MARIANN DOWLING,

Appellant

v.

CITIZENS BANK


_____


On Appeal from the United States District Court
for the Western District of Pennsylvania
(D.C. No. 05-cv-00914)
District Judge: Honorable David Stewart Cercone
_____


Submitted Under Third Circuit LAR 34.1(a)
October 2, 2008

Before: FISHER, CHAGARES and HARDIMAN, *Circuit Judges*.

(Filed: October 8, 2008)


_____


OPINION OF THE COURT
_____


HARDIMAN, *Circuit Judge*.

Mariann Dowling appeals from an order of the District Court granting summary judgment in favor of Citizens Bank on Dowling's employment discrimination claims. We will affirm.

I.

Dowling was employed as a Branch Manager at the Peebles Road Office of Citizens Bank until she was dismissed in May 2004. Dowling was responsible for the branch's retail banking operations and supervised 10-15 employees. During the period relevant to this litigation, Dowling reported to Regional Manager Charlotte Bullock and Regional Director of Retail Banking Craig Campbell.

Beginning in 2003, Citizens made it a priority to open new consumer checking accounts. To this end, Bullock and Campbell pressured their employees to solicit family members and friends to open accounts, which could be established with initial deposits of $10. Employees who met this and similar performance goals were eligible for incentives, including vacation packages and prizes. The bank's 2003 Retail Incentive Program provided that "[a]ny attempts at gaming, altering or modifying results in any element of the employee incentive program are grounds for withholding payment and disciplinary action up to and including termination."

Pursuant to the incentive program, Citizens awarded Dowling a company-paid vacation to the Caribbean in early 2004. Shortly thereafter, Campbell received an anonymous letter stating:

Someone needs to seriously research Marianne [*sic*] Dowling and Teresa Rotondo of the Peebles Rd office for gaming in checking accounts. Everyone in our region knows, it's like an unspoken issue among us. We don't think it's fair because of this that she keeps being rewarded with trips and incentive [*sic*] and those of us that make our goals the right way are overlooked. We could never figure out how she always pulled out making her goal. The proof is all in black and white, you just need to look.

App'x 167. Campbell asked Richard Sedory, Vice President of Human Resources, and Matt Clydesdale, Director of Corporate Security, to investigate.

Assisted by an auditor, Clydesdale discovered that Dowling had opened 114 checking accounts in her name or in the names of her family members and friends. Most were opened with nominal deposits and closed after short periods of time during which little or no account activity occurred. Two of Dowling's employees — Teresa Rotondo and Assistant Branch Manager Terry Braun — engaged in similar conduct. In addition, Braun had been transferring funds from the bank's general ledger to customers' personal and business accounts to inflate her performance rating.

Campbell confronted Dowling about the aforementioned activities on May 3, 2004. Despite Dowling's insistence that she did not intentionally violate bank policy, Campbell fired her because he "no longer had confidence in her as a manager." Campbell also fired Braun, but issued only a warning to Rotondo because "it appeared that she was acting under the instructions[] . . . of Ms. Dowling," and "given her status as a less experienced nonmanagement employee," she was less culpable.

3

Dowling sued Citizens for employment discrimination claiming that she was fired because of her sex, age, association with her disabled husband, and expected exercise of Family Medical Leave Act rights.[1]  The Magistrate Judge recommended that Citizens's motion for summary judgment be granted because Dowling failed to "refute the Defendant's legitimate, non-discriminatory reasons for her termination."  The District Court adopted the Magistrate Judge's Report and Recommendation and entered summary judgment in favor of Citizens.

## II.

We have jurisdiction pursuant to 28 U.S.C. § 1291.  Our review is plenary, and we apply the same standard as the District Court.  *Marzano v. Computer Science Corp.*, 91 F.3d 497, 501 (3d Cir. 1996).  We will affirm the District Court's grant of summary judgment if "there is no genuine issue as to any material fact" and Citizens is "entitled to judgment as a matter of law."  FED. R. CIV. P. 56(c).  In making this determination, we "view the facts in the light most favorable" to Dowling and "draw all inferences" in her favor.  *Marzano*, 91 F.3d at 501.

Citizens argues that even if Dowling made out *prima facie* cases for each of her claims, it responded with legitimate, nondiscriminatory justifications for her termination.

---

[1] Dowling brought claims under the Age Discrimination in Employment Act (ADEA), 29 U.S.C. § 621 *et seq.*, Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.*, the Family Medical Leave Act (FMLA), 29 U.S.C. § 2601 *et seq.*, the Americans With Disabilities Act (ADA), 42 U.S.C. § 12101 *et seq.*, and the Pennsylvania Human Relations Act (PHRA), 43 P.S. § 951 *et seq.*

*See McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802 (1973); *Fuentes v. Perskie*, 32 F.3d 759, 763 (3d Cir. 1994). Dowling argues that Citizens's justifications are insufficient "to meet [her] prima facie case," and that the justifications are "pretext for the sort of discrimination prohibited" by Title VII, the ADEA, the ADA, the FMLA, and the PHRA. *McDonnell Douglas*, 411 U.S. at 804.

To show pretext, a claimant must present "some evidence . . . from which a factfinder could reasonably either (1) disbelieve the employer's articulated legitimate reasons; or (2) believe that an invidious discriminatory reason was more likely than not a motivating or determinative cause of the employer's action." *Fuentes*, 32 F.3d at 764-65; *see Torre v. Casio, Inc.*, 42 F.3d 825, 830 (3d Cir. 1994). Most of Dowling's arguments focus on the former category of evidence.

First, Dowling argues that Citizens proffered "inconsistent" and "shifting" justifications for her discharge. It is true that inconsistency is indicative of pretext, *see, e.g., Fuentes*, 32 F.3d at 764, but Citizens's justifications were not inconsistent. When Campbell fired Dowling, he told her that he lost "confidence in her as a manager." Subsequently, Citizens prepared an Equal Employment Opportunity Commission statement indicating that Dowling was dismissed for: (1) her improper "gaming" in checking accounts, and (2) her failure to properly supervise her staff (especially Braun and Rotondo). These explanations are entirely consistent; the EEOC statement simply specifies the reasons for Campbell's loss of confidence in Dowling's managerial abilities.

5

Second, Dowling argues that because she did not intentionally violate bank policy, Citizens's reliance on her "gaming" activities as a basis for her termination was pretextual. We are unpersuaded because Citizens need not show that Dowling intentionally violated company policy in order to have a legitimate reason for firing her. *See Kautz v. Met-Pro Corp.*, 412 F.3d 463, 467-68 (3d Cir. 2005). So long as Citizens's decision was not motivated by discriminatory animus, we defer to it. *Id*. at 468.

Third, Dowling argues that she established pretext through evidence that Citizens treated similarly situated employees more favorably. *See Simpson v. Kay Jewelers*, 142 F.3d 639, 645-46 (3d Cir. 1998). Specifically, she complains that Scott Vidovich, a "30-year-old male branch manager" who failed to audit his tellers in accordance with bank policy, and Teresa Rotondo, who engaged in gaming, received only warnings for their conduct. We find these employees' situations distinguishable.

Vidovich, like Dowling, failed to properly supervise his employees, allowing one to embezzle $69,800. Unlike Vidovich, however, Dowling's negligent supervision was compounded by her own gaming activities. Conversely, Rotondo engaged in gaming activities, but she was a non-management employee under Dowling's direct supervision. Accordingly, Citizens had a legitimate reason to view Rotondo as less culpable and less of a threat to the proper and efficient operation of the bank.

Finally, Dowling shifts her focus from discrediting Citizens's explanations to suggesting "invidious discriminatory reason[s]" that "more likely than not" motivated the

6

bank's decision. *Fuentes*, 32 F.3d at 764. Dowling highlights Bullock's testimony that she believed Campbell was hiring "young kids" to replace older branch managers. Bullock admitted, however, that her belief was based on "rumor [more] than anything else." Dowling also points to statistical evidence that she claims substantiates Bullock's speculation by showing that "only eight persons over the age of 50 were hired or promoted to the position of branch manager out of a total of 39" applicants.

This evidence falls short of demonstrating that discriminatory animus was more likely than not a motivating factor in Citizens's decision to fire Dowling. First, the ADEA protects individuals over the age of forty, 29 U.S.C. § 631, and Dowling's statistics show that 15 of the 39 individuals promoted to branch manager fell into this class. Second, Dowling's statistics address neither the characteristics of the applicant pool from which the remaining 24 "young kids" were selected nor the characteristics of the branch managers they replaced. Without these comparisons, we cannot determine whether qualified individuals over the age of 40 were rejected in favor of less qualified, younger applicants. *See Ezold v. Wolf, Block, Schorr & Solis-Cohen*, 983 F.2d 509, 542-43 (3d Cir. 1992).

## III.

In short, Dowling presented insufficient evidence from which a reasonable factfinder could conclude that Citizens's legitimate, nondiscriminatory justification for her dismissal was pretextual. Intentionally or otherwise, Dowling violated the bank's

7

policy against "gaming" and supervised her employees so negligently that one managed to steal from the bank's general ledger. Her supervisor's loss of confidence in her as a manager was neither pretextual nor improper. We will affirm the order of the District Court.