Robert F. **MARTIN**

v.

**GENERAL ELECTRIC COMPANY.**

Civ. A. No. 93–4837.

United States District Court,
E.D. Pennsylvania.

June 28, 1995.

layoff, plaintiff located another job in the company and received an offer of employment. That offer was later rescinded. Plaintiff's four-count complaint alleges two counts of age discrimination, based on the two layoffs, and one count of unlawful retaliation, based on the rescinded job offer. The fourth count is for damages. For the reasons given below, defendant's motion for summary judgment is granted in part and denied in part.

## I. FACTS

Plaintiff, Robert Martin, began working for General Electric ("GE") in 1966. After receiving his engineering degree, he was involved in the area of quality control. Plaintiff became a manager in 1988. His annual salary had risen to over $60,000. In September 1991, when Martin worked in GE's Astro Space Division, business conditions required GE to reduce the size of its workforce and lay off employees. Pursuant to its reduction-in-force policy, GE laid off employees based on their relative rankings on a scoring matrix, with low-rated employees receiving layoff notices. Martin was one of approximately 1,000 workers laid off in this initial layoff. At the time of the layoff he was 49 years old.

Following the 1991 layoff, Martin was hired into a position within the Space Power Group, effective November 1991. The new position paid approximately $4,000 less than Martin's previous position. Another round of layoffs occurred in March 1992 and, akin to being twice struck by lightning, plaintiff again received a layoff notice. As with the earlier layoff, GE employees were again ranked on a matrix and low-ranking employees were the ones laid off. Martin was 50 years old when he was laid off for the second time.

Following the March 1992 layoff, Martin sought and obtained another offer of employment within GE, this time in California, with GE Government Services. GE extended the offer on May 8, 1992. Plaintiff asserts that his attorney notified GE on June 15, 1992, that plaintiff was the victim of age discrimination and that he intended to utilize "appropriate avenues of redress" regarding the al-

Ellis M. Saull, King of Prussia, PA, for plaintiff.

Kathryn H. Levering, Daniel J. Brennan, Philadelphia, PA, for defendant.

### MEMORANDUM AND ORDER

DITTER, District Judge.

This action, before me on defendant's motion for summary judgment, derives from plaintiff's being twice laid off from defendant company, General Electric. After the second

leged discrimination. GE rescinded the offer of employment on June 19, 1992.[1]

In count 1 of his complaint, plaintiff alleges that he was laid off in September 1991 because of his age, in violation of the Age Discrimination in Employment Act ("ADEA"), 29 U.S.C. §§ 621–634. Count 2 makes the same claim with regard to the March 1992 layoff. Count 3 alleges that the job offer was rescinded in retaliation for plaintiff's asserting his rights under the ADEA, in violation of 29 U.S.C. § 623(d).

## II. THE AGE DISCRIMINATION COUNTS

### A. Analysis of an Age Discrimination Claim

■ The same burden-shifting analysis applicable to Title VII discrimination claims also applies to age discrimination claims under the ADEA. *Torre v. Casio, Inc.*, 42 F.3d 825, 829 (3d Cir.1994). Therefore, a plaintiff must first establish a prima facie case of age discrimination. To establish a prima facie case of age discrimination in a reduction-in-force ("RIF") situation, a plaintiff alleging age discrimination must show that he or she (1) is a member of the protected class; (2) was discharged from employment; (3) was qualified for the job from which he or she was terminated; and (4) other similarly situated, but substantially younger employees, were retained. *Torre*, 42 F.3d at 831.[2]

■ If a plaintiff establishes a prima facie case, the burden then shifts to the defendant to articulate a legitimate, non-discriminatory reason for its actions.[3] The presumption of discrimination which arose from plaintiff's prima facie case is then dispelled and plaintiff, to survive a defendant's motion for summary judgment, must present *either* evidence that discredits the defendant's proffered reasons *or* evidence that shows that discrimination was more likely than not a motivating cause of defendant's adverse employment action. *Id.* at 830; *Fuentes v. Perskie*, 32 F.3d 759, 764 (3d Cir.1994). It is important to recognize that plaintiff can defeat a motion for summary judgment either by discrediting defendant's reason or by coming forward with additional evidence of discrimination, but that he or she need not do both. *Torre* and *Fuentes* are clear that either "discrediting evidence" or "discrimination evidence" will suffice at the summary judgment stage, although plaintiff *at trial* will need to convince the factfinder both that the reason was false and that discrimination was the real reason. 42 F.3d at 829–830; 32 F.3d at 763, 764. Defendant confuses plaintiff's burden at summary judgment with his burden at trial, asserting that Martin can defeat GE's motion for summary judgment only by proving both that GE's articulated reasons for the layoffs were false and that the real reason was age discrimination. Defendant cites *Seman v. Coplay Cement Company* in support of its position. 26 F.3d 428 (3d Cir.1994). *Seman* is inapplicable at this stage, however—though clearly relevant if this matter goes to trial—because it involved plaintiff's burden of proof at trial.

### B. The September 1991 Layoff

■ To establish a prima facie case for age discrimination Martin must establish that he was a member of the protected class when he was laid off, that he was qualified for his position, and that other similarly situated, but substantially younger employees,

---

1. Effective January 4, 1993, plaintiff accepted a position with GE in the Astro Space Division. He has been continuously employed in that position since then.

2. The lower court in *Torre* held that plaintiff had not established a prima facie case because he stipulated that he had not been replaced. 42 F.3d at 830. This was error, the Third Circuit said, and held that it was appropriate to reformulate the fourth prong of the prima facie case to provide that plaintiff was terminated in a RIF and other, similarly situated but younger employees were retained. *Id.* at 831. An employer undergoing a RIF seeks to reduce the numbers in its workforce. Therefore, requiring a "RIFfed" plaintiff to show that he or she was replaced by another employee would be a contradiction.

3. This burden-shifting as described applies to a pretext case of employment discrimination. The framework is somewhat different in a mixed-motive case. While a plaintiff can proceed at trial under either or both theories, both plaintiff and defendant argue the instant motion on the basis of pretext. *See Starceski v. Westinghouse Elec. Corp.*, 54 F.3d 1089 (3d Cir.1995) (cit. omitted).

were retained. There is no dispute as to the first three of the required four elements of a prima facie case. Martin was 49 when first laid off; thus he was within the protected class of workers over age 40. 29 U.S.C. § 631(a). GE does not contest that he was qualified for the position or that he was laid off.

■ GE does contest, however, whether plaintiff has satisfied the fourth element. GE's argument focuses on whether younger employees replaced Martin. The proper focus in a RIF situation is not whether new workers replaced the plaintiff, but whether similarly situated but substantially younger workers were retained when Martin was laid off. Plaintiff has established this fourth prong. Sixteen employees were listed on the scoring matrix used in connection with the September 1991 layoff.[4] (Def.Mot. for Summ.J., ex. 6). Martin and two others (Ruggles and Barlow) were laid off. (Ex. to Pl.Resp., p. 25). As shown in the table titled "Ages of Employees Appearing on September 1991 Matrix," Martin was 49 years old when laid off, while substantially younger employees—aged 29, 34, and 40—were retained.[5] (Def.Mot. for Summ.J., ex. 2, tab 3). I find that Martin has therefore established a prima facie case with regard to the September 1991 layoff.

■ Once plaintiff has established a prima facie case of age discrimination, the burden shifts to the defendant to articulate a legitimate, non-discriminatory reason for its actions. GE has done so. Plaintiff stipulated that business conditions forced GE to reduce the size of its workforce and that GE had a RIF policy in place which detailed the procedures for filling out the scoring matrix and providing follow-up assistance to employees identified for layoff. (Def.Mot. for Summ.J., ex. 2, tab 2). Plaintiff's score on the relevant matrix was the second lowest; three employ-

ees were laid off. GE has thus carried its burden.

To survive the motion for summary judgment Martin must respond with either evidence that discredits GE's proffered reason or evidence that shows that discrimination was more likely than not a motivating cause of GE's decision to lay him off. Martin argues that he has offered both types of evidence. He claims to discredit GE's proffered reason—that plaintiff was the second-lowest scored employee on his matrix—by asserting that the scoring was incorrect and he should have been awarded more points. He also presents evidence which he says shows that age discrimination was likely the motivating reason for GE's decision. I find that plaintiff has not offered sufficient evidence that would discredit GE's given reason, but that he has presented sufficient evidence from which a factfinder could conclude that age discrimination was more likely than not a motivating cause in GE's decision. *See Fuentes*, 32 F.3d at 765.

■ In attempting to discredit GE's proffered reason for the layoff, Martin argues that his supervisor, Charles Krisch, who filled out the matrix for the September 1991 layoff, underrated plaintiff in several areas. For example, plaintiff received zeros in the skill areas of leadership, communication, and analytical. Plaintiff asserts that he was good in those areas, stating with regard to leadership, "with the group that I inherited.... there was a constant trail to human resources because of the personality problems that they were having ... [by the time the matrix was made], there w[ere] no problems, everything was resolved. We were working together as a smooth team." (Ex. to Pl. Resp., p. 24). With respect to communications, plaintiff explained that he had daily input into Krisch's voicemail, conceded that "communication" applied both up and down, and offered that he met regularly with his team and tried to kill rumors as fast as they

---

4. I note that the sixteen employees appear to be at different job levels. For example, Martin is designated, with four other employees, as L–12, while other employees on the same matrix are identified as L–10 and L–14. In the absence of any suggestion or evidence from either party that the sixteen employees on this matrix are not "similarly situated," I will assume that the prop-

er comparison is among all sixteen, and not just among the five designated as L–12.

5. Employees aged 46, 47, and 48 were also retained. I do not consider them to be "substantially younger" than Martin.

happened. (*Id.*). Finally, plaintiff explained that he had good analytic skills and that his entire experience at GE had been in identifying and resolving problems. (*Id.*). Plaintiff's belief as to his own abilities, however, are not sufficient to cast doubt on GE's proffered reason that it laid off plaintiff because he scored low on the skills matrix. Simply, Martin must cast doubt on GE's reason by offering evidence that the reason was weak, implausible, incoherent, or contradictory. *See Fuentes*, 32 F.3d at 765. He has not done so. That he would rate himself higher than Krisch did in certain areas is not sufficient to cast doubt on GE's reason. This court does not sit as a super human resources office, judging whether plaintiff indeed possessed better leadership, communications, or analytical skills than others on the same matrix.

Plaintiff, however, can still defeat summary judgment by producing sufficient evidence from which a factfinder could conclude that age discrimination was more likely than not the real cause of the layoff. Martin has offered evidence that his supervisor, Krisch, considered age to be a liability and that Krisch considered age as a factor in determining who would be laid off. For example, plaintiff asserts that when he, Martin, was completing a matrix for the employees whom he supervised, Krisch instructed him to investigate if anyone on plaintiff's list was close to retirement and might opt to retire if given a layoff notice. (Ex. to Pl.Resp., p. 20). Martin also claims that Krisch told him with regard to a Mr. Fluck, an employee on plaintiff's list, "fine, age is a requirement. That's how we get rid of him. That's how we get down to the names we need." (Def.Mot. for Summ.J., ex. 3, p. 274). Martin asserts that Krisch wanted to lay off Fluck because of his age. (*Id.* at 300). Martin also stated that when he asked Krisch about making arrangements for Martin's 25–year service lunch,

Krisch responded that "we don't have that anymore because all that does, that just honors old people." [6] (Ex. to Pl.Resp., p. 17).

GE refutes Martin's evidence, showing that Krisch arranged and attended a 25–year service lunch for another employee. (Def.Mot. for Summ.J., ex. 25). It also avers that Fluck received a higher rating on the matrix with Krisch's input than on the matrix that Martin alone compiled. (Def.Mot. for Summ.J., ex. 3, p. 303).

I find that plaintiff has offered sufficient evidence from which a factfinder could conclude that age was more likely than not a motivating or determinative cause in GE's decision to lay him off in September 1991. *Fuentes*, 32 F.3d at 765.[7] Martin has offered his testimony about what Krisch, his supervisor, said to him regarding age, older employees, and the impending layoffs. While GE has offered evidence that discounts or refutes plaintiff's evidence, it is up to the factfinder to hear the testimony and determine whose testimony and explanations to credit. It is not the court's place to decide whose explanation is more worthy of credence; the proper examination is whether there is a question of fact as to defendant's articulated reason for laying off plaintiff. Ann C. McGinley, *Credulous Courts and the Tortured Trilogy: Use of Summary Judgment in Title VII and ADEA Cases*, 34 B.C.L.Rev. 203, 242 (1993). There is a genuine issue of material fact in this instance, and GE's motion for summary judgment on count 1 must therefore be denied.

## C. The March 1992 Layoff

After the first layoff, plaintiff accepted a position at GE and began working in "Building B." GE underwent another round of layoffs in March 1992 and again notified Martin, who was 50 at the time, that he

---

**6.** Martin also offers as evidence of age bias that Krisch gave him his 25–year watch late in the afternoon with no one else present. I find that a lack of pomp and ceremony is not indicative of age discrimination.

**7.** While *Fuentes* uses the language, "illegitimate factor more likely than not was a motivating or determinative cause," the language used to charge the jury at trial is different. In a pretext

case, the district court should instruct the jury that plaintiff must prove that age played a role in the decisionmaking process and "that it had a determinative effect on the outcome of that process." *Miller v. Cigna Corp.*, 47 F.3d 586, 598 (3d Cir.1995). The *Fuentes* language is more applicable at this, the summary judgment stage, while *Miller* is applicable to trial.

would be laid off. This layoff is the basis for count 2 of plaintiff's complaint. Defendant does not dispute that Martin was a member of the protected class, that he was laid off, or that he was qualified for his position. Plaintiff has established the fourth prong of the prima facie case as well. The matrix used for this round of layoffs shows that Martin received the third lowest score of the employees ranked; three employees—Martin, Messrs. Burtenshaw and Wornsup—were laid off. (Ex. to Pl.Resp., p. 27). At 50, plaintiff was the oldest employee laid off (Burtenshaw was 48; Wornsup was 39). (Def.Mot. for Summ.J., ex. 2, tab 4). As with the previous layoff, older employees than Martin were retained when he was laid off. More importantly, similarly situated, but substantially younger employees, were retained. GE retained employees aged 31, 35, and 41; I find that these are substantially younger than Martin's age of 50. Plaintiff has therefore established the elements of a prima facie case of age discrimination with regard to the March 1992 layoff.[8]

To rebut the presumption of age discrimination which plaintiff has thus established, GE must articulate a legitimate, non-discriminatory reason for its actions. As with the prior layoff, GE has done so by showing that business conditions forced the reduction in the workforce size and that GE had a RIF policy in place in which employees' relative scores on a matrix determined who would be laid off. Plaintiff's score on the relevant matrix was the third lowest and three employees were laid off. GE has thus carried its burden.

To survive the motion for summary judgment Martin must counter with evidence that discredits GE's proffered reason or evidence that shows that discrimination was more likely than not a motivating cause of GE's decision to lay him off. *Fuentes,* 32 F.3d at 765. I find that he has not done either, although he attempts to show the former.

█ Mr. Urbanik was plaintiff's manager in the *Space Power Group* and filled out the matrix for the March 1992 layoff. (Ex. to

Pl.Resp., pp. 28, 55). Plaintiff asserts that Urbanik ranked him unfairly in the areas of team skills and customer, vendor, and internal interface. (*Id.* at 27). The only evidence he offers in support of his attempt to discredit the scoring, and hence GE's proffered reason, is that most of his years of experience at GE involved working with vendors and customers. (*Id.*). He stated further that he had once intervened to calm down a customer representative after a GE employee had yelled at the representative. Martin pointed out that the GE employee in question, Mr. Hoffmeister, had received a higher score than Martin had received in the area of customer, vendor, and internal interface. (Def.Mot. for Summ.J., ex. 11). Martin also offers as evidence the fact that Urbanik did not consult with anyone else in filling out the matrix. (Ex. to Pl.Resp., pp. 28, 55). Plaintiff has not presented sufficient evidence to cast doubt on GE's proffered reasons for the second layoff. He has shown only that plaintiff's manager did not consult others when completing the matrix, that plaintiff had many years' experience in working with vendors, and that he scored lower in customer interface than another employee who had had one incident of arguably poor customer relations. I find that these are insufficient to discredit defendant's given reason.

█ Because plaintiff has not offered sufficient evidence to discredit GE's proffered reason for the March 1992 layoff, he cannot defeat summary judgment on that basis. In addition, plaintiff has offered *no* evidence from which a factfinder could conclude that age discrimination was more likely than not a motivating factor in the second layoff. He has not suggested any evidence indicating that Urbanik, his manager, was motivated by plaintiff's age in scoring him low on the matrix, or that Urbanik ever referred to plaintiff's or any other employee's age. Therefore, because Martin has not offered either sufficient evidence that discredits defendant's proffered reason or any evidence that shows that discrimination was more likely than not a motivating cause of GE's deci-

---

**8.** There is a question as to whether a Mr. Johnson replaced plaintiff. Because replacement by another employee is not an element of a prima facie case in the RIF context, this question of fact is not material.

**1060**

sion to lay him off, defendant's motion for summary judgment on count 2 must be granted.

## III. THE RETALIATION COUNT

■■■ The ADEA prohibits an employer from discriminating against an individual because the individual "opposed any practice made unlawful" by the law. 29 U.S.C. § 623(d). Title VII's analysis is applicable in the context of age discrimination. To establish a prima facie case of retaliation, Martin must establish that (1) he was engaged in a protected activity, (2) his offer of employment was rescinded subsequent to or contemporaneous with such activity, and (3) a causal link exists between the protected activity and rescission of the offer. *See Jalil v. Avdel Corp.,* 873 F.2d 701, 708 (3d Cir.1989), *cert. denied,* 493 U.S. 1023, 110 S.Ct. 725, 107 L.Ed.2d 745 (1990). If plaintiff can establish a prima facie case, the burden then shifts to GE to advance a legitimate, nondiscriminatory reason for rescinding the job offer. If GE succeeds in doing so, plaintiff survives the motion for summary judgment by introducing sufficient evidence from which a factfinder could conclude that GE's reason was pretextual.

After Martin was laid off for the second time, he sought other employment within GE. In April 1992 he went to California to interview with Arthur Caldwell for a position with GE Government Services, Inc. ("GEGS"). On May 8, 1992, Caldwell faxed an offer of employment to plaintiff. Within a few days, plaintiff told Caldwell on the telephone that he was going to accept the job. On June 12, 1992, Caldwell asked Martin to indicate in writing that he was accepting the job offer. When Martin did so is in dispute. In the meantime, Martin's attorney, Ellis Saull, sent a letter dated June 15, 1992, to Michael Smith, a GE Vice President. The letter stated that "my review of several aspects of this layoff and its implementation leads me to believe that there is at least a prima facie indication that Mr. Martin is the victim of age discrimination. We intend to

utilize all appropriate avenues of redress regarding this matter." (Def.Mot. for Summ. J., ex. 16). The letter also stated that the attorney was willing to discuss the matter with GE. On June 19, 1992, Caldwell telephoned Martin and told him that the job offer had been rescinded. Plaintiff asserts that GEGS withdrew the job offer in retaliation for his assertion of rights under the ADEA.

■■■ The first prong of a prima facie case of retaliation under the ADEA is that plaintiff was engaged in a protected activity. I find that Martin engaged in a protected activity of opposing GE's alleged unlawful practice of age discrimination when he sought legal advice and had his attorney notify GE that he intended to seek redress for a possible age discrimination claim.[9] *See Robinson v. SEPTA,* 982 F.2d 892, 896 (3d Cir.1993) (plaintiff's letter to his congressman sufficiently articulated his opposition to racial discrimination); *Porta v. Rollins Environ. Servs., Inc.* 654 F.Supp. 1275, 1284 (D.N.J. 1987) (facts of particular case determine what statutorily protected opposition consists of), *aff'd without op.,* 845 F.2d 1014 (1988).

■■■ The second prong of Martin's prima facie case is that GE rescinded the GEGS job offer subsequent to or contemporaneous with the protected opposition. Plaintiff has established this prong as well. Mr. Saull's letter was dated June 15; GEGS withdrew the offer on June 19. Finally, plaintiff must show a causal link between the protected activity and rescission of the offer. The timing of the two events may demonstrate a causal link, although timing alone does not create an inference of causation. *Quiroga v. Hasbro, Inc.,* 934 F.2d 497, 501 (3d Cir.1991) (timing of action could suggest discriminatory motives, but facts of case failed to establish causation); *Jalil,* 873 F.2d 701, 708 (3d Cir.1989). I find that the temporal proximity and intra-corporate communication about Martin in this case are sufficient to show

9. Plaintiff also filed a complaint with the EEOC. His EEOC charge cannot be considered the stat-

utorily protected opposition in this instance,

prima facie causation.[10] As GE itself recounts in its response to Martin's EEOC charge, the GE personnel involved in Martin's layoff were in contact with the GEGS personnel involved with the job offer to Martin. GE Vice President Michael Smith met with Martin on June 10, 1992, and discussed the meeting with Lynn Mazur–Cowart, the human resources representative handling Martin's layoff. (Ex. to Pl.Resp., p. 68). That same day, Mazur–Cowart spoke by telephone with Sally Zamora, also a human resources representative, who was working with Caldwell on the GEGS offer to Martin. (*Id.*). Martin's attorney sent the letter to Smith five days later. The timing of the letter and withdrawal of the GEGS offer, coupled with the existence of a channel of communication between the GE personnel involved with the layoffs and potential age discrimination claim and the GEGS personnel involved with the job offer, is sufficient to establish the third (causation) prong of plaintiff's prima facie case.

■ GE can rebut the presumption established by the prima facie case by articulating a legitimate, nonretaliatory reason for withdrawal of the job offer.[11] GE has not done so in its brief. There is, nonetheless, an explanation that can be culled from the evidence. Caldwell stated in his deposition that Martin postponed his intended starting date at GEGS and that he, Caldwell, had heard around June 10 that Martin had decided to decline the offer. (Def.Mot. for Summ. J., ex. 13, p. 18). Martin had talked with GE Vice President Michael Smith, who told Mazur–Cowart of the meeting. Mazur–Cowart told Zamora, who worked with Caldwell, that Martin was declining the GEGS offer. According to Caldwell, after he talked with

Martin on June 12, he "did not have a warm fuzzy feeling that this was ever going to come to fruition" despite Martin's assurance that he would sign the letter. Accordingly, Caldwell told himself that if Martin did not send his written response within seven days, Caldwell would withdraw the offer. (*Id.* at 18–19). In the meantime, Smith received the letter from Martin's attorney dated June 15. Caldwell says that he did not receive Martin's signed acceptance within a week, so he called Martin on June 19 to withdraw the offer. (*Id.* at 20).

■ In order to survive summary judgment on this count, plaintiff must introduce sufficient evidence from which a factfinder could conclude that GE's reason was pretextual. I find that he has done so. Plaintiff offers evidence that he signed GEGS' May 8 offer letter on June 10, 1992; he also asked two witnesses to sign the acceptance to verify the date. They did so while playing pool. (Def.Mot. for Summ.J., ex. 14). One of the witnesses, James Granese, claims that he mailed the letter the next day. (Ex. to Pl. Resp., p. 41). On the other hand, GE maintains that the letter was not mailed until June 19, 1992, after the offer was withdrawn, and offers evidence of the postmarked envelope. (Def.Mot. for Summ.J., ex. 15). Mere recounting of these factual issues and Maltese-falcon-like intrigue makes clear that genuine issues of material fact abound. A credulous factfinder could believe that plaintiff on June 10 entrusted to Granese his written, witnessed acceptance of Caldwell's offer, find that Granese mailed the acceptance on June 11 despite the June 19 postmark, and conclude that Caldwell's proffered reason that he withdrew the offer because

---

however, because it was filed in July 1992, *after* the alleged retaliation occurred.

**10.** GE argues that the timing of the events is insufficient as a matter of law to sustain a retaliation claim, citing *Griffiths v. CIGNA Corporation* in support of that proposition. 988 F.2d 457, 469 (3d Cir.), *cert. denied,* —— U.S. ——, 114 S.Ct. 186, 126 L.Ed.2d 145 (1993). (Def.Mot. for Summ.J., p. 37–38). *Griffiths* does not state that proposition. The Third Circuit pointed out that the only evidence plaintiff offered of retaliation were the inferences drawn from the fact that his termination came shortly after he filed an EEOC

charge. *Id.* at 472. While insufficient to demonstrate a prima facie *mixed motive* case, the court said, the evidence supported a prima facie *pretext* case and remanded the case for a new trial on the retaliation claims under a pretext theory. *Id.* (emphasis added). As the instant case is also a pretext case, *Griffiths* squarely supports that the timing of the actions in question can support an inference of retaliation.

**11.** I am unconvinced by defendant's argument that plaintiff has failed to exhaust his administrative remedies because he filed his EEOC charge against GE but not against GEGS *per se.*

Martin never accepted in writing is therefore false, while accepting that the communication between Caldwell's office and Smith's office supports a finding of retaliation. On the other hand, the factfinder could credit Caldwell's testimony that he did not know of the letter from plaintiff's attorney, while discrediting, on the basis of the envelope, Granese's testimony that he mailed Martin's acceptance before June 19. The question for the factfinder will be whether Martin accepted the offer before June 19 and whether Caldwell's withdrawal of the offer on that date was an act of retaliation or the result of the deadline Caldwell had previously imposed on himself. As that is a genuine issue of material fact, defendant's motion for summary judgment on count 3 must therefore be denied.

## IV. CONCLUSION

I find that plaintiff has established a prima facie case of age discrimination with regard to the layoff in September 1991. While GE has offered a legitimate, nondiscriminatory explanation for its action, plaintiff has offered sufficient evidence from which a factfinder could conclude that age was more likely than not a reason plaintiff was laid off. Defendant's motion for summary judgment on count 1 must therefore be denied. With regard to count 2, I find that plaintiff has again established his prima facie case and GE has again articulated a legitimate reason for the layoff. Because Martin has not, however, offered sufficient evidence that either discredits GE's proffered reason or shows that discrimination was more likely than not a motivating factor for GE's decision, defendant's motion for summary judgment on count 2 must be granted. Finally, I find that plaintiff has established a prima facie case of retaliation and that there is evidence of a nonretaliatory reason for the withdrawal of the GEGS job offer. Because there is, however, sufficient evidence from which a credulous factfinder could conclude that defendant's reason was pretextual and that retaliation was more likely than not the cause of the withdrawal, GE's motion for summary judgment on count 3 must be denied.

An appropriate order follows.

## ORDER

AND NOW, this 28th day of June, 1995, defendant's motion for summary judgment on counts 1 and 3 is hereby DENIED; and defendant's motion for summary judgment on count 2 is hereby GRANTED. Judgment is hereby entered for defendant on count 2.