

2006 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

6-15-2006

# Langley v. Merck Co Inc

Precedential or Non-Precedential: Non-Precedential

Docket No. 05-3205

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_2006

Recommended Citation

"Langley v. Merck Co Inc" (2006). *2006 Decisions*. Paper 891.
http://digitalcommons.law.villanova.edu/thirdcircuit_2006/891

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova
University School of Law Digital Repository. It has been accepted for inclusion in 2006 Decisions by an authorized administrator of Villanova
University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

**NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

———

No. 05-3205

———

MARY LANGLEY,

Appellant

v.

MERCK & CO., INC.

———

On Appeal from the United States District
Court for the Eastern District of Pennsylvania
(No. 04-cv-3796)
District Judge: Juan R. Sanchez

———

Submitted Under Third Circuit LAR 34.1(a)
June 13, 2006

Before:  FISHER, ALDISERT and LOURIE[*] Circuit Judges

(Filed June 15, 2006)

———

OPINION OF THE COURT

———

ALDISERT, Circuit Judge.

———

[*] The Honorable Alan D. Lourie, Circuit Judge for the United States Court of Appeals for
the Federal Circuit, sitting by designation.

Plaintiff Mary Langley, an African-American female, appeals from a grant of summary judgment in favor of defendant Merck & Co., Inc. ("Merck") on her 42 U.S.C. § 1981 employment discrimination suit. Because Langley has not presented sufficient evidence that her reassignment was an "adverse employment action" or that Merck's proffered reasons for the reassignment were pretextual, we will affirm.

I.

The parties are familiar with the facts and proceedings before the District Court, so we will only briefly revisit them here. Langley and Warren Moore, a White male, were both Managers in Merck's Computer Validation Quality Assurance ("CVQA") group. In the Fall of 2003, Merck began a company-wide reorganization called Equinox. As part of the reorganization, the two CVQA positions occupied by Moore and Langley were to be consolidated and one of the Managers was to be reassigned to the position of Program Coordinator. MaryAnne Everett, Merck's Director of Worldwide Non-Clinical Quality Assurance, was in charge of the consolidation. She reviewed Moore's and Langley's personnel files and resumes and solicited feedback from three co-workers with whom both Langley and Moore had good working relationships. Ultimately, Everett chose to keep Moore as the Manager of the CVQA group and to reassign Langley to the Program Coordinator position. According to Everett's deposition testimony, the decision was based on three considerations: (1) Moore had prior work experience in pharmaceutical safety assessment laboratories similar to those of CVQA's customers and Langley did

not; (2) all solicited feedback favored Moore over Langley; and (3) Moore's assessment scores were higher.

After complaining to her supervisor about being reassigned to the Program Coordinator position, Langley commenced the present action against Merck. On March 28, 2005, Merck moved for summary judgment. After reviewing the deposition testimony and the parties' submissions, the District Court granted Merck's motion, concluding that Langley's reassignment was not an "adverse employment action" and that she failed to demonstrate that Merck's articulated reasons for the reassignment were pretextual. The Court also denied Langley's motion to compel discovery responses, which was pending before it, as moot.

## II.

Our review of the District Court's grant of summary judgment is plenary. *DiFelice v. Aetna Healthcare*, 346 F.3d 442, 445 (3d Cir. 2003). We apply the same test used by the District Court, i.e., whether, viewing the evidence in the light most favorable to the non-moving party, the moving party has met its threshold burden of showing the absence of a genuine issue of material fact. *Lawrence v. Nat'l Westminster Bank New Jersey*, 98 F.3d 61 (3d Cir. 1996). Essentially, the inquiry is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson v. Liberty Lobby*, 477 U.S. 242, 251-252 (1986).

Langley's 42 U.S.C. § 1981 racial discrimination claim is governed by the framework established in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973). *See Patterson v. McLean Credit Union*, 491 U.S. 164, 186 (1989) (applying framework to claims brought under 42 U.S.C. § 1981 ). First, she must establish a *prima facie* case of discrimination by showing that: (1) she is a member of a protected class; (2) she satisfactorily performed the duties required by her position; (3) she suffered an adverse employment action; and (4) either similarly-situated non-members of the protected class were treated more favorably or the adverse job action occurred under circumstances that give rise to an inference of discrimination. *Sarullo v. U.S. Postal Serv.*, 352 F.3d 789, 797 (3d Cir. 2003); *McDonnell Douglas*, 411 U.S. at 802. The burden then shifts to Merck to articulate a legitimate, non-discriminatory reason for the challenged action. If Merck can do this, the burden then shifts back to Langley to demonstrate that the proffered reason is pretextual.

### III.

Langley contends that at least seven adverse consequences resulted from her reassignment: (1) her job title changed; (2) she no longer supervises employees; (3) she now reports to the same position that she previously held; (4) her duties are different; (5) her office was moved; (6) her new position is a dead-end position with no opportunity for advancement; and (7) she has less opportunity for financial reward.

We agree with the District Court that Langley has not demonstrated that she has

4

suffered an adverse employment action. Although Langley asserts that her new title is a dead-end position that offers less opportunity for financial reward, she not adduced any evidence supporting this contention. She concedes that her pay and grade level, which also determine her bonus, did not change as the result of her reassignment and that Merck continues to pay for her executive MBA courses at the University of Pennsylvania. Langley's supervisors testified that her opportunities for advancement remain the same and that the reassignment did not negatively impact her career opportunities within Merck.[1] Indeed, Everett recently promoted a Program Coordinator to an Associate Director position, which is a higher position than Manager. Langley also concedes that no one has indicated that her reputation is tarnished or that they hold her in less regard because of the reassignment.

That Langley's title, office, reporting relationship and responsibilities may have changed is insufficient to make her reassignment an adverse employment action. An "adverse employment action" is one that is "'serious and tangible enough to alter an employee's compensation, terms, conditions, or privileges of employment.'" *Cardenas v. Massey*, 269 F.3d 251, 263 (3d Cir. 2001) (quoting *Robinson v. City of Pittsburgh*, 120

---

[1] Throughout her brief, Langley criticizes the District Court for crediting her supervisors' testimony while discounting her own testimony. Langley, however, cannot create a genuine issue of material fact by simply testifying as to her beliefs concerning the relevant facts – such as that the Program Coordinator position offers less opportunity for advancement and that Everett has a history of racial discrimination – without showing that her beliefs are based on either personal knowledge or some other evidence.

5

F.3d 1286, 1300 (3d Cir. 1997).[2]  Minor actions, such as lateral transfers and changes of

title and reporting relationships, are generally insufficient to constitute adverse

employment actions.[3]  *Compare Flaherty v. Gas Research Inst.*, 31 F.3d 451, 456 (7th

Cir. 1994) (holding that changes to title and reporting relationship are insufficient to

constitute an adverse employment action under the ADEA where plaintiff retained same

grade level, benefits and level of responsibility) *and Galabya v. New York City Bd. of*

*Educ.*, 202 F.3d 636, 640 (2d Cir. 2000) (concluding that delay in teacher's reassignment,

transfer to purportedly inferior facilities, and change in responsibilities from teaching

special education students to teaching mainstream students, did not constitute an adverse

employment action) *with de la Cruz v. New York City Human Res. Admin. Dep't of Soc.*

---

[2] Although Langley's complaint is grounded in 42 U.S.C. § 1981, both parties rely upon cases involving Title VII, the ADA and the ADEA in discussing whether Langley has suffered an adverse employment action, and Langley does not argue that a more relaxed standard should apply to § 1981 actions.  Moreover, we have previously held that the elements of employment discrimination under Title VII are virtually identical to the elements of discrimination under § 1981, *Schurr v. Resorts International Hotel Inc.*, 196 F.3d 486, 499 (3d Cir. 1999), the ADA, *Lawrence*, 98 F.3d at 68, and the ADEA, *Miller v. CIGNA Corp.*, 47 F.3d 586, 592 (3d Cir. 1995).

[3] Of course, whether an action constitutes an adverse employment action depends on the attendant circumstances.  For example, at least one court of appeals has indicated that moving a person's office to an undesirable location could, under certain circumstances, constitute an adverse employment action.  *Compare Collins v. State of Illinois*, 830 F.2d 692, 703 (7th Cir. 1987) (stating in dictum that relegating an employee to an undesirable office location would constitute an adverse employment action) *with Galabya v. N.Y. City Bd. of Educ.*, 202 F.3d 636, 640 (2d Cir. 2000) (holding that a transfer to purportedly inferior facilities is not an adverse employment action).  Here, however, the relocation was merely incident to the reassignment and Langley has not presented any evidence that the new facilities are demonstrably inferior.

6

*Serv.*, 82 F.3d 16, 21 (2d Cir. 1996) (holding that proof of diminution in prestige and less opportunity for professional growth, although "quite thin," was sufficient to show adverse employment action for purposes of summary judgment) *and Torre v. Casio, Inc.*, 42 F.3d 825, 831 n.7 (3d Cir. 1994) (concluding that plaintiff "created a material fact issue concerning whether he was transferred . . . to a dead-end job that had been effectively eliminated before he was transferred to it" even though his pay and benefits remained the same). Absent some evidence from which a reasonable factfinder could conclude that the Program Coordinator position is inferior to, rather than merely different from, the Manager position, Langley has failed to create a genuine issue of material fact as to whether she suffered an adverse employment action.

IV.

Even assuming *arguendo* that Langley has made out a *prima facie* case of employment discrimination, we also agree with the District Court that Langley failed to demonstrate that Merck's articulated reasons for the reassignment were pretextual. Langley asserts that there are "15 reasons" that the decision was pretextual. Most of these reasons, however, challenge the assessment process. For example, Langley contends that Everett focused on the wrong qualifications, solicited information from the wrong people, based her decision on highly subjective assessments, and never actually reviewed the audit reports.

Langley's disagreement with the assessment criteria and her belief that she is

7

better qualified for the Manager position is not sufficient to avoid summary judgment.  As we explained in *Fuentes v. Perskie*, 32 F.3d 759 (3d Cir. 1994):

> [t]o discredit the employer's proffered reason . . . the plaintiff cannot simply show that the employer's decision was wrong or mistaken, since the factual dispute at issue is whether discriminatory animus motivated the employer, not whether the employer is wise, shrewd, prudent, or competent. Rather, the . . . plaintiff must demonstrate such weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions in the employers's proffered legitimate reasons for its action that a reasonable factfinder could rationally find them "unworthy of credence," and hence infer "that the employer did not act for [the asserted] nondiscriminatory reasons."

*Id*. at 765 (citations and emphasis omitted).

Although an employee may be able to prove pretext by showing that the proffered reason was so arbitrary or plainly wrong that it could not have been the employer's real reason, *see Jones v. School Dist. of Philadelphia*, 198 F.3d 403, 413 (3d Cir. 1999), Langley has not done so here.  Her criticisms of Merck's methodology are technical, and do not reveal "such weaknesses, implausibilities, inconsistencies, incoherencies or contradictions" in Merck's proffered explanation that a reasonable factfinder could conclude that it is "unworthy of credence." *Fuentes*, 32 F.3d at 765; *see also Simpson v. Kay Jewelers*, 142 F.3d 639, 647 (3d Cir. 1998) (rejecting employee's argument that the employer should have used different criteria).

Langley also contends that Everett has a history of favoring White employees over African-American employees and that "Everett was not comfortable with Blacks[.]" (Langley Br. at 28.)  Yet Langley offers no evidence, aside from her own testimony, in

8

support of these generalized assertions.[4]  Indeed, her contentions are belied by the evidence in the record.  (*See* Everett Dep., app. at 498-499 (discussing several African-American applicants that she had hired and promoted).)  Langley has therefore failed to provide sufficient evidence from which a reasonable factfinder could conclude that Merck's proffered reasons are pretextual.

V.

We have considered all contentions presented by the parties and conclude that no further discussion is necessary.[5]  We will affirm the judgment of the District Court.

---

[4] The only specific example of discrimination identified by Langley is her contention that Everett selected Lisa Kruk, a White female, over Meika Pinckney, an African-American female, for a Manager position.  (Langley Br. at 28.)  But Everett testified that she did not select Kruk for the promotion, (Everett Dep., app. at 541), and there is no evidence in the record contradicting this testimony.  It is therefore unclear how Kruk's promotion supports Langley's contention that Everett has a history of discriminating against African-American employees.  Moreover, even if Everett were responsible for the promotion, this one instance would not be sufficient to create a genuine issue of material fact as to whether Merck's articulated reasons for reassigning Langley were pretextual.  *See Anderson*, 477 U.S. at 252 ("The mere existence of a scintilla of evidence in support of the [nonmovant's] position will be insufficient; there must be evidence on which the jury could reasonably find for the [nonmovant].").

[5] Langley also contends that the District Court exceeded the permissible bounds of discretion by denying as moot her motion to compel Merck to answer certain interrogatories and produce certain documents.  We disagree.  Even assuming that some of the requested discovery could have shown that Merck's proffered reason was pretextual, none of the requested discovery relates to whether the reassignment was an adverse employment action.  Because we affirm the District Court on both grounds, the motion to compel is moot.