Barry Michael **LADD,** Plaintiff,

v.

The **BOEING COMPANY,** Defendant.

Civil Action No. 06–28.

United States District Court,
E.D. Pennsylvania.

Nov. 13, 2006.

J. Stephen Woodside, J. Stephen Woodside Pc, Norristown, PA, for Plaintiff.

Christopher C. Lund, M. Frances Ryan, Dechert Llp, Philadelphia, PA, for Defendant.

### *MEMORANDUM AND ORDER*

PRATTER, Judge.

## I. *BACKGROUND*

On January 4, 2006, Plaintiff Barry Michael Ladd commenced this action, raising a single claim of disparate treatment discrimination against The Boeing Company ("Boeing") pursuant to Title VII, 42 U.S.C. § 2000e, et *seq.* ("Title VII"). Presently before the Court is Plaintiff Ladd's Motion for Leave to Amend his Complaint to add three new counts against Boeing. Proposed Count II claims disparate impact discrimination in violation of Title VII; proposed Count III claims retaliation in violation of Title VII; and proposed Count IV claims race discrimination in violation of 42 U.S.C. § 1981 (" § 1981"). Boeing opposes the addition of Counts II and IV.

Mr. Ladd, a Native American Indian by birth and descent, began his career at Boeing as a tool crib attendant in 1975 at Boeing's Ridley Park, Pennsylvania plant facility. (Compl.¶ 7.) Throughout his greater than twenty-year tenure with Boeing, Mr. Ladd held a variety of positions as an off-site inspector and an off-site senior inspector of aircraft. (Compl.¶¶ 7–8.) However, in 2001, Mr. Ladd's career at

Boeing took a problematic turn. During his work as a lead inspector in Boeing's V–22 Program Mr. Ladd alleges that he became the target of direct and repetitive harassment by his first line supervisor, and other line workers, who ridiculed and mocked him for being of Native American Indian descent. (Compl.¶ 13.) After complaining to his supervisor, Mr. Ladd was transferred out of the V–22 Program into "final assembly" at the Chinook CH–47 Program and then again reassigned to work on sheet metal modifications to used aircraft at Boeing's "mod center." (Compl.¶ 22.) Mr. Ladd was dissatisfied with Boeing's response to the harassment he faced. Believing that his transfers and reassignments were incongruent with his skill, experience and authority, Mr. Ladd filed an internal charge with Boeing's equal employment opportunity office, and with Boeing's Office of Ethics. (Compl.¶ 23.) His problems continued, and on September 9, 2003, Mr. Ladd filed a formal charge with the Pennsylvania Human Relations Commission ("PHRC"), which he cross-filed with the federal Equal Employment Opportunity Commission ("EEOC"). (Pl.'s Mot. 17.) However, after filing the charge, Mr. Ladd continued to face strong headwinds in the path of his career, and he was again reassigned to perform different and less desirable work, and denied opportunities to earn overtime hours. (Compl.¶ 45–58.) Mr. Ladd filed a second charge with the PHRC and the EEOC on July 13, 2004. These new charges subsumed his first charges of discrimination, and additionally claimed that Boeing had taken adverse employment action against him in retaliation for the filing of his 2003 administrative charge. (Compl.¶ 59.)

Mr. Ladd received his right-to-sue notice on October 6, 2005 for his first EEOC charge of intentional discrimination. (Compl.¶ 42.) Thereafter, on January 4, 2006, Plaintiff Ladd commenced this action, alleging a single count of disparate treatment discrimination under Title VII, for which his administrative remedies had been exhausted. Boeing answered the Complaint on May 24, 2006. On July 10, 2006, Mr. Ladd requested a right to sue notice for his second EEOC charge, which he still has not received, despite the fact that the EEOC terminated its investigation on February 14, 2006. (Compl.¶ 60.) Plaintiff filed this Motion to Amend his Complaint on August 8, 2006 by which Mr. Ladd seeks to add the additional counts described above. For the reasons explained in greater detail below, the Court has determined to grant the Motion.

## II. STANDARD OF REVIEW

■ The Federal Rules of Civil Procedure provide that leave to amend a pleading "shall be given when justice so requires." Fed.R.Civ.P. 15(a). Although the decision to grant or deny leave to amend a complaint is committed to the sound discretion of the court, leave should, consistent with the commands of Rule 15(a), be liberally granted. *Gay v. Petsock,* 917 F.2d 768, 772 (3d Cir.1990); *Coventry v. U.S. Steel Corp.,* 856 F.2d 514, 518–19 (3d Cir.1988). The United States Supreme Court has articulated the following standard to be applied in evaluating whether to grant or deny leave to amend:

In the absence of any apparent or declared reason—such as undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, futility of amendment, etc.—the leave sought should, as the rules require, be 'freely given.'

*Lindsley v. Girard Sch. Dist.,* 213 F.Supp.2d 523, 528 (W.D.Pa.2002) (quoting

*Foman v. Davis,* 371 U.S. 178, 183, 83 S.Ct. 227, 9 L.Ed.2d 222 (1962)).

■ While a motion to amend a complaint may ordinarily be granted, a court should deny the motion where the amendment would be futile. *Lorenz v. CSX Co.,* 1 F.3d 1406, 1414 (3rd Cir.1993). An amendment is considered futile "if the amended complaint cannot withstand a motion to dismiss." *Sunoco, Inc. v. Praxair, Inc.,* 2001 WL 438419, at *1 (E.D.Pa. Apr.30, 2001) (quoting *Jablonski v. Pan American World Airways, Inc.,* 863 F.2d 289, 292 (3rd Cir.1988)). Therefore, in ruling on the motion, the Court will use the same legal standard it employs when deciding a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6).[1]

## III. DISCUSSION

### A. Proposed Count III: Retaliation Under Title VII

■ First, the Court addresses Mr. Ladd's unopposed motion to amend his Complaint to add a count against Boeing for unlawful retaliation. Mr. Ladd alleges that Boeing took retaliatory action against him for filing and pursuing two separate administrative charges of race discrimination during the course of his employment. (Pl.'s Mot. 9.) To state a *prima facie* claim for retaliation, Plaintiff must set forth facts sufficient to establish that: (1) he engaged in a protected activity; (2) Boeing

took adverse action after or contemporaneous with the protected activity; and, (3) a causal link exists between the protected activity and the employer's adverse employment action. *Abramson v. William Paterson College,* 260 F.3d 265, 286 (3d Cir.2001).[2]

On September 9, 2003, Mr. Ladd filed his first charge of discrimination with the PHRC (no. 170–2003–02512), cross filed with the EEOC, alleging adverse employment action on the part of Boeing based, in part, on his race / national origin as a Native American. (Am.Compl.¶ 43.) After filing this charge, beginning in February 2004, Mr. Ladd claims that Boeing reassigned him to various departments, each time essentially demoting Mr. Ladd in seniority, as well as providing him with less and less desirable work, and depriving him of opportunities to earn overtime hours. (Am.Compl.¶¶ 43–58.) On July 13, 2004, Mr. Ladd filed a second charge alleging further race discrimination and retaliation against Boeing (no. 170–2004–02502). (Am.Compl.¶ 59.) In September 2004, Mr. Ladd was again reassigned to a position with even less availability for overtime work. (Am.Compl.¶ 55.)

■ Mr. Ladd's administrative charges are protected activities under Title VII, and changes in employment status and reassignment can be adverse employment actions. *Weston v. Pennsylvania,*

---

1. When deciding a motion to dismiss, the Court may look only to the facts alleged in the complaint and its attachments. *Jordan v. Fox, Rothschild, O'Brien & Frankel,* 20 F.3d 1250, 1261 (3d Cir.1994). The Court must accept as true all well-pleaded allegations in the complaint and view them in the light most favorable to the plaintiffs. *Angelastro v. Prudential–Bache Sec.,* Inc., 764 F.2d 939, 944 (3d Cir.1985). A Rule 12(b)(6) motion will be granted only when it is certain that no relief could be granted under any set of facts that

could be proved by the plaintiffs. *Ransom v. Marrazzo,* 848 F.2d 398, 401 (3d Cir.1988).

2. Section 704(a) of Title VII forbids an employer from discriminating against an employee "because he has opposed any practice made an unlawful employment practice by this subchapter, or because he has made a charge, testified, assisted, or participated in any matter in an investigation ... under this subchapter." *Woodson v. Scott Paper Co.,* 109 F.3d 913, 919 (3d Cir.1997) (quoting 42 U.S.C. § 2000e–3(a)).

251 F.3d 420, 430–431 (3d Cir.2001).[3] Moreover, the Third Circuit Court of Appeals has held that temporal proximity between protected activity and the adverse employment action is sufficient to establish a causal link. Tomaselli, 2004 WL 2988515, at *6 (quoting Woodson v. Scott Paper Co., 109 F.3d 913, 920 (3d Cir. 1997)). As a result of these transfers, Mr. Ladd claims to have suffered direct and indirect harm. (Am.Compl.¶ 91.) Since Boeing has asserted no argument that Mr. Ladd's proposed Count III would cause prejudice or undue delay, and the Court finds that Plaintiff Ladd has alleged sufficient facts to support theories of retaliation upon which to base his Title VII claims, Plaintiff's Motion to Amend his Complaint to add Count III is granted.

## B. Proposed Count II: Disparate Impact Discrimination Under Title VII

Plaintiff Ladd next wishes to amend his Complaint to add a claim of discrimination against Boeing based on a disparate impact theory under Title VII. For the reasons discussed below, the Court grants his Motion, notwithstanding the observation that the Court fully expects future legal arguments from the parties as to whether this case actually involves specific and isolated employment practices disparately impacting Native Americans. See Verdin v. Weeks, 124 Fed.Appx. 92, 95 (3d Cir.2005)

 Disparate impact discrimination is a brand of "unintentional discrimination," whereby an employer adopts certain practices that are "facially neutral in their treatment of different groups" but "in fact fall more harshly on one group than another and cannot be justified by business necessity." Raytheon Co. v. Hernandez, 540 U.S. 44, 52, 124 S.Ct. 513, 157 L.Ed.2d 357 (2003) (quoting Teamsters v. United States, 431 U.S. 324, 335–336, 97 S.Ct. 1843, 52 L.Ed.2d 396 (1977)). In the case of disparate impact discrimination, employers act without a deliberately discriminatory motive, but their actions are functionally equivalent to intentional discrimination. Watson v. Ft. Worth Bank and Trust, 487 U.S. 977, 987, 108 S.Ct. 2777, 101 L.Ed.2d 827 (1988). Evidence submitted in disparate impact cases usually focuses on statistical disparities rather than specific incidents, and on competing explanations for those disparities. Id.

The disparate impact theory of discrimination under Title VII was judicially created in the seminal case of Griggs v. Duke Power Co., 401 U.S. 424, 91 S.Ct. 849, 28 L.Ed.2d 158 (1971). In embracing disparate impact theory, the Supreme Court recognized that Title VII was meant not only to proscribe overt discrimination, but also to prohibit "practices that are fair in form, but discriminatory in operation." Lanning v. SEPTA, 181 F.3d 478, 485 (3d Cir.1999) (quoting Griggs, 401 U.S. at 431, 91 S.Ct. 849). The original claims of disparate impact discrimination related to employers' use of objective policies, such as standardized tests, that operated to discriminate against a particular group, yet were not demonstrably related to the jobs for which they were used. See, e.g., Griggs, 401 U.S. at 425–426, 91 S.Ct. 849. As the law in this area matured, courts began to recognize that unintentional discrimination could also arise from employment decisions based on the exercise of

---

**3.** An adverse employment action has been defined by the Supreme Court as a "significant change in employment status, such as hiring, firing, failing to promote, reassignment, or a decision causing a significant change in benefits." Tomaselli v. Upper Pottsgrove Tp., 2004 WL 2988515, *5 (E.D.Pa. Dec.22, 2004) (quoting Weston, 251 F.3d at 430–431).

personal judgment or subjective criteria. *Watson*, 487 U.S. at 989, 108 S.Ct. 2777.

■ In *Watson*, the Supreme Court held that disparate impact analysis may be applied to subjective, as well as objective, employment practices, reasoning that this expansion was necessary to combat the subtle racism and stereotyping that can compel subjective decisionmaking.[4] *Id.* at 990, 108 S.Ct. 2777. However, recognizing that this expansion could potentially chill legitimate business practices, such as that of hiring based on loyalty, common sense, and creativity, and creates the risk of instilling a preferential quota system, the Supreme Court held that in order to bring a claim of disparate impact discrimination against an employer based on subjective criteria, a plaintiff must be very specific. *Id.* at 991, 108 S.Ct. 2777. He must isolate and identify the specific employment policies, not simply the presence of subjective decision-making itself, that create statistical disparities, i.e. impose a disparate impact, on a protected group. *Id.* at 994, 108 S.Ct. 2777. Further, plaintiffs may not present less evidence against a defendant for unintentional discrimination than is required to prove intentional discrimination. *Watson*, 487 U.S. at 987, 108 S.Ct. 2777.

■ In order to survive a motion to dismiss a disparate impact claim, a plaintiff must plead that a facially neutral employment practice adversely affects one group disproportionately. *Jackson v. Merck & Co.,* 1999 WL 962522, at *6, 1999 U.S. Dist. LEXIS 16107, at * 16 (E.D.Pa. Oct. 21,

1999) (citing *Powell v. Ridge*, 189 F.3d 387, 394 (3d Cir.1999)). The practice must be specific, but a plaintiff need not present nor prevail upon an entire *prima facie* case of discrimination in order to justify an amendment to his complaint. Mr. Ladd seeks to amend his Complaint to plead:

> Boeing directly and/or indirectly instigated and/or tolerated a practice and policy of delegating Ladd's valid complaints of discrimination and unfair retaliatory treatment based on his minority (protected class native American Indian) status to the subjective decision-making and caprice of Ladd's superiors, without regard to objective guidelines, policy or criteria and/or in open, wilful, violation of the protocol and provisions governing Ladd's employment under his collective bargaining agreement.

(Am.Compl.¶ 77.) Mr. Ladd explains that it was the "subjective and transparent management polices and practices that permitted [his] managers and supervisors to exercise unchecked subjective decision-making authority which in turn allowed decisions based intentionally on his protected class status as Native American Indian." (Am.Compl.¶ 79.)

Boeing argues that Mr. Ladd's proposed Count II is insufficient to state a disparate impact claim because he has not specifically identified particular subjective policies or criteria that Boeing implemented and that functioned to discriminate against Native Americans.[5] Boeing ar-

---

4. The Court made clear that what is required by Title VII is "the removal of artificial, arbitrary, and unnecessary barriers to employment when the barriers operate invidiously to discriminate on the basis of racial or other impermissible classification." *Lanning*, 181 F.3d at 485.

5. Defendants cite *Anderson v. Douglas & Lomason Co.*, 26 F.3d 1277, 1284 (5th Cir.1994),

to suggest that the Court must not grant Mr. Ladd leave to amend his Complaint because Mr. Ladd has failed to pinpoint a specific employment practice that caused the disparate impact. *Anderson* is related to, but does not stand for this proposition. Considering plaintiffs' disparate impact claims *at summary judgment phase*, the district court found, and the Fifth Circuit Court of Appeals confirmed, that plaintiffs had failed to present a *prima*

gues that Mr. Ladd's general allegations of subjective and unchecked decision-making do not withstand the particularity requirement of *Watson*, 487 U.S. at 990, 108 S.Ct. 2777 (an employer's policy of leaving decisions to the unchecked discretion of supervisors should itself raise no inference of discriminatory conduct). When read generously, however, it seems that the particular policy that Mr. Ladd identifies for these purposes is that of Boeing's subjective complaint handling process, which, in operation, visited wrongful discrimination upon Native Americans who lodged complaints of unfair or discriminatory treatment.[6]

Under Title VII's disparate impact theory of liability, plaintiffs establish a *prima facie* case of disparate impact by demonstrating that application of a facially neutral standard has resulted in a significantly discriminatory pattern of employment decisions. *See Lanning v. SEPTA*, 181 F.3d 478, 485 (3d Cir.1999). At trial, a Title VII disparate impact plaintiff cannot meet the burden of establishing a *prima facie* case without proving "that the defendants' racially neutral practice detrimentally affects persons of a particular race to a greater extent than other races."

*Powell v. Ridge*, 189 F.3d 387, 394 (3d Cir.1999).[7] It is not enough for the plaintiff "merely [to] prove circumstances raising an inference of discriminatory impact at issue; [the plaintiff] must prove the discriminatory impact at issue." *Id.* (quoting *Johnson v. Uncle Ben's Inc.*, 657 F.2d 750, 753 (5th Cir.1981)).

However, the burden a Title VII plaintiff must meet to survive a motion to dismiss, "is much less onerous." *Powell*, 189 F.3d at 394. To survive a motion to dismiss, all that the plaintiff must do is plead that a facially neutral practice's adverse effects fall disproportionately on a group protected by Title VII.[8] Furthermore, "when a federal court reviews the sufficiency of a complaint . . . the issue is not whether a plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to support the claims." *Powell*, 189 F.3d at 394 (quoting *Scheuer v. Rhodes*, 416 U.S. 232, 236, 94 S.Ct. 1683, 40 L.Ed.2d 90 (1974), *overruled on other grounds by Davis v. Scherer*, 468 U.S. 183, 104 S.Ct. 3012, 82 L.Ed.2d 139 (1984)).

Since Plaintiff Ladd's proposed claim of disparate impact discrimination advances a subjective management policy with enough specificity to survive a motion

---

*facie* case of disparate impact discrimination because they did not identify a specific aspect of subjective decision-making by their employer that was shown to have any causal connection to the alleged class-based imbalance in the employer's general or supervisory work force. *Anderson*, 26 F.3d at 1284. Mr. Ladd need not successfully establish a causal connection at this phase of his case insofar as he need not establish a *prima facie* case of disparate impact discrimination to survive a motion to dismiss.

6. In fact, in Boeing's Answer, in asserting an affirmative defense, Boeing identifies its "policy against racial and national-origin based harassment and discrimination" and the "reasonable and available procedure for handling complaints thereof." (Ans. at 9, ¶ 6.)

7. The *Powell* court explained that the parties' burdens are the same for Title VI and Title VII disparate impact cases. *Id.* at 394 n. 4.

8. The Court of Appeals for the Eighth Circuit explained in *Ring v. First Interstate Mortgage, Inc.*, 984 F.2d 924 (8th Cir.1993): "the prima facie case under [disparate impact] analysis is an evidentiary standard—it defines the quantum of proof plaintiff must present to create a rebuttable presumption of discrimination . . . Under the Federal Rules of Civil Procedure, an evidentiary standard is not a proper measure of whether a complaint fails to state a claim." *Powell*, 189 F.3d at 394.

to dismiss, it is appropriate to grant Mr. Ladd leave to include this Count II in his Amended Complaint.

### C. Proposed Count IV: Intentional Discrimination In Violation of Section 1981

 Finally, Plaintiff Ladd proposes to add a claim against Boeing for intentional discrimination in violation of 42 U.S.C. § 1981 ("§ 1981"). As part of the Civil Rights Act of 1866, § 1981 prohibits discrimination in the making and enforcement of private contracts. *Johnson v. Railway Express Agency, Inc.*, 421 U.S. 454, 459–460, 95 S.Ct. 1716, 44 L.Ed.2d 295 (1975). Section 1981 claims are governed by the same framework as Title VII discrimination claims. *Langley v. Merck & Co.*, 186 Fed.Appx. 258, 259 (3d Cir.2006). As such, Mr. Ladd must first assert facts sufficient to establish a *prima facie* case of discrimination by showing that: (1) he is a member of a protected class; (2) he satisfactorily performed the duties required by his position; (3) he suffered an adverse employment action; and (4) either similarly-situated non-members of the protected class were treated more favorably or the adverse job action occurred under circumstances that give rise to an inference of discrimination. *Id.* (citing *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973); *Patterson v. McLean Credit Union*, 491 U.S. 164, 186, 109 S.Ct. 2363, 105 L.Ed.2d 132 (1989) (applying framework to claims brought under 42 U.S.C. § 1981)).[9]

 It is the first component of the *McDonnell Douglas* framework under which Boeing asserts that Plaintiff Ladd's claims would not survive a motion to dismiss. Unlike Title VII, Section 1981 does not prohibit discrimination based on national origin.[10] Boeing argues that the Court therefore cannot grant relief to Mr. Ladd under § 1981 because Mr. Ladd's claims as a Native American sound in national origin, rather than race. A person's national origin refers to "the country where a person was born, or, more broadly, the country from which his or her ancestors came." *Espinoza v. Farah Manufacturing Co.*, 414 U.S. 86, 88, 94 S.Ct. 334,

---

**9.** Claims arising under § 1981 are subject to a two year statute of limitations. *Wilson v. Garcia*, 471 U.S. 261, 266–268, 105 S.Ct. 1938, 85 L.Ed.2d 254 (1985) (when a federal statute does not contain a statute of limitations, the Court applies the most nearly analogous state statute of limitations); *Saint Francis College*, 481 U.S. at 608, 107 S.Ct. 2022 (the statute of limitations for § 1981 is imported from the two-year Pennsylvania state statute applicable to personal injury). Absent a continuing violation, all discriminatory acts that are alleged to have occurred more than two years prior to the Complaint are time-barred. *See National Railroad Passenger Corp. v. Morgan*, 536 U.S. 101, 113, 122 S.Ct. 2061, 153 L.Ed.2d 106 (2002). Mr. Ladd alleges that incidents of intentional and unintentional discrimination began in 2001, and acts of retaliation for his complaints of this discrimination, and continued acts of discrimination began shortly after his first adminis-

trative charge in 2003, and continued until October 2004. Boeing does not oppose the addition of this Count IV based on timeliness, and Mr. Ladd's proposed Amended Complaint sufficiently details a continuing violation, and those allegations of continuing discrimination are not time barred. *Vera v. Bethlehem Steel Corp.*, 448 F.Supp. 610, 615 (W.D.Pa.1978) (citing *Bethel v. Jendoco Construction Corporation*, 570 F.2d 1168 (3d Cir.1978)).

**10.** While the Supreme Court has not definitively excluded national origin discrimination from the types of discrimination prohibited by § 1981, most cases proceed as if this were the state of the law. See *e.g., Amini v. Oberlin College*, 259 F.3d 493, 502 (6th Cir.2001). In any event, it is likely that Plaintiff Ladd's status as a Native American Indian likely offers him the protection of § 1981 as described above.

38 L.Ed.2d 287 (1973).[11] Because Native American reservations are in "some sense separate sovereigns," and because Mr. Ladd "does not claim that he is physically distinctive from Caucasians by virtue of something like his skin color," Boeing argues, Plaintiff Ladd's claim is better conceptualized as one of national origin than race. (Def.'s Br. at 10.)

Boeing seems to argue that racial discrimination is confined to discrimination based on physiognomic characteristics, and that Native Americans cannot be grouped together, stereotyped, or classified based on outward appearance. In *St. Francis College v. Al–Khazraji*, 481 U.S. 604, 613, 107 S.Ct. 2022, 95 L.Ed.2d 582 (1987), the Supreme Court considered the distinction between race and National Origin in the context of a claim brought under § 1981. Plaintiff Al–Khazraji was an associate professor at St. Francis College; he was born in Iraq and raised in the United States. *Id.* at 604, 107 S.Ct. 2022. Al–Khazraji complained that St. Francis discriminated against him based on his race in violation of § 1981 when the college denied him tenure. *Id.* Specifically, he argued that the College discriminated against him be-

cause he was born an Arab, not that he was born in Iraq. *Id.* at 613. The Supreme Court agreed that Al–Khazraji had a cognizable claim insofar as Congress intended § 1981 to prohibit discrimination against identifiable classes of persons who, are subjected to intentional discrimination solely because of their ancestry or ethnic characteristics. *Id.*[12] Such discrimination, the Supreme Court continued, "is racial discrimination that Congress intended § 1981 to forbid, whether or not it would be classified as racial in terms of modern scientific theory." *Id.* Section 1981, "at a minimum," reaches discrimination against an individual "because he or she is genetically part of an ethnically and physiognomically distinctive subgrouping of homo sapiens."[13] *Id.*

▮▮▮▮ Thus, it is logically and analytically possible, and it is prohibited by § 1981, to discriminate against a Native American based on race. In *Verdin v. Weeks Marine Inc.*, 124 Fed. Appx. 92, 96–97 (3d Cir.2005), the Third Circuit Court of Appeals reached the merits of a § 1981 claim brought by a Native American for employment discrimination based on his race. In so doing, the *Verdin* court did

---

11. To prove that the status of Native American Indian is a classification based on national origin rather than race, Boeing cites *United States v. Antelope*, 430 U.S. 641, 645, 97 S.Ct. 1395, 51 L.Ed.2d 701 (1977), and characterizes the case as "explaining that, under federal law, Native Americans are not considered 'as a discrete racial group, but, rather, as members of quasi-sovereign tribal entities.' " (Def.'s Resp. 10.) *Antelope* does not support Defendant's assertion; in that case, the Supreme Court held that the federal prosecution of Indians under the Major Crimes Act, 18 U.S.C. § 1153, does not violate due process. 430 U.S. at 649–650, 97 S.Ct. 1395. In reaching this result, the Supreme Court concluded that its decisions leave no doubt that federal legislation with respect to Indian tribes, although relating to Indians as such, is not based upon impermissible racial classifications. *Id.* "Quite the contrary, classifica-

tions expressly singling out Indian tribes as subjects of legislation are expressly provided for in the Constitution and supported by the ensuing history of the Federal Government's relations with Indians. *Id.* at 645, 97 S.Ct. 1395. Indian tribes are unique aggregations possessing attributes of sovereignty over both their members and their territory; they are 'a separate people' possessing 'the power of regulating their internal and social relations.' " *Id.* (internal citations omitted).

12. The Supreme Court found it of no import that Arabs are currently technically classified as Caucasians. *Id.* at 647, 97 S.Ct. 1395.

13. The Supreme Court noted, however, that a distinctive physiognomy is not essential to qualify for § 1981 protection. *Id.*

not pause to consider whether discrimination based on one's status as an American Indian fits into the category of racial discrimination. *Id.* (Verdin did not assert the kind of pervasive and regular offensive conduct necessary to establish a *prima facie* case of hostile work environment discrimination under § 1981). Neither does it seem that the addition of this claim at this juncture in the life of this litigation would cause Boeing any undue delay or prejudice inconsistent with the Court's discretion to allow amendments pursuant to Fed.R.Civ.P. 15, given the fact that the framework and evidence needed to prove a claim of intentional discrimination under Title VII are the same as those for § 1981.

## IV. *CONCLUSION*

For the foregoing reasons, Plaintiff Ladd is permitted to amend his Complaint to add Counts II–IV. Since Plaintiff actually filed the Amended Complaint with the Court as an exhibit to the Motion for Leave to Amend on August 8, 2006, and Defendant timely responded on August 28, 2006, the Amended Complaint will be added to the docket nunc *pro* tunc as of August, 8, 2006. An appropriate Order follows.

## *ORDER*

AND NOW, this 13th day of November 2006, upon consideration of Plaintiff's Motion Under Rule 15(a) for Leave to File Amended Complaint (Docket No. 9) and Defendant's Response thereto (Docket No. 10), IT IS HEREBY ORDERED THAT Plaintiff's Motion to Amend is GRANTED as to all proposed new counts (Counts II–IV), and the Clerk of Court shall docket the Amended Complaint and add it to the docket nunc *pro* tunc as of August 8, 2006.

The case shall proceed on the following amended schedule:

1. Boeing shall file and serve its response to the Amended Complaint within 20 days of the date of this Order.

2. All discovery shall proceed promptly and continue in such manner as will assure that all requests for, and responses to, discovery will be served, noticed and completed by December 31, 2006.

3. On or before January 26, 2007, Plaintiff shall identify and submit curriculum vitae for all expert witnesses on liability and damages who have not yet been identified. On or before February 2, 2007, Plaintiff shall serve Defendant with reports and/or responses to expert witness discovery for all expert witnesses on liability and damages.

4. On or before February 2, 2007, Defendant shall identify and submit curriculum vitae for all expert witnesses on liability and damages. On or before February 9, 2007, Defendant shall serve Plaintiff with reports and/or responses to expert witness discovery for all such expert witnesses.

5. Any party expecting to offer opinion testimony from lay witnesses pursuant to Federal Rule of Evidence 701 with respect to the issues of liability and damages shall, at the time required for submission of information and/or reports for expert witnesses on liability and damages, serve opposing parties with details and/or documents covering the lay opinions of the Rule 701 witnesses.

6. Any motions for summary judgment or Daubert motions shall be filed and served on or before March 14, 2007. Responses to any such motions shall be filed and served within the time provided under the Local Civil Rules of this Court. During the Initial Pretrial Conference on July 11, 2006, the Court directed both counsel for Plaintiff and counsel for Defendant to review the Court's General Pretrial and

Trial Policies and Procedures on the Court's website [14] in order to be familiar with the Court's requirements with respect to summary judgment motions. To that end, the Court directs the parties that, in both their submissions and responses, controlling legal opinions rendered by the United States Supreme Court and the Court of Appeals for the Third Circuit *shall be cited to and discussed,* whenever possible, to defend arguments in support of and/or in opposition to the motion for summary judgment.

Two copies of any such motions and responses shall be served on the Court (Chambers, Room 7614) when the originals are filed.

7. All parties are to prepare and file with the Clerk of Court their Pretrial Memoranda, in accordance with this Order and Local Rule of Civil Procedure 16.1(c) as follows:

 a. Plaintiff: on or before April 12, 2007.

 b. Defendant: on or before April 26, 2007.

One (1) copy of each Pretrial Memorandum shall be served on the Court (Chambers, Room 7614) when the original is filed.

8. All trial exhibits shall be marked and exchanged on or before April 5, 2007.

9. Any party having an objection to: (a) the admissibility of any exhibit based on authenticity; (b) the admissibility for any reason (except relevancy) of any evidence expected to be offered; or (c) the admissibility of any opinion testimony from lay witnesses pursuant to Federal Rule of Evidence 701, shall set forth separately each such objection in their Pretrial Memorandum. Each objection shall describe with particularity the ground and the authority for the objection.

10. A final pretrial conference will be held with the Honorable Gene E.K. Pratter on April 27, 2007 at 10:00 a.m. in Chambers, Room 7614, United States Courthouse. Lead trial counsel is required to appear at the conference. If trial counsel is on trial in another matter, an attorney in his or her office who is thoroughly familiar with this case is required to appear at the conference.

11. The case will be placed on the Court's trial pool list on June 5, 2007. The case will be tried to a jury. The estimated time for trial is 6 days.

12. If any party desires an "offer of proof" as to any witness or exhibit expected to be offered, that party shall inquire of counsel prior to trial for such information. If the inquiring party is dissatisfied with any offer provided, such party shall file a motion seeking relief from the Court prior to trial.

13. Because a witness may be unavailable at the time of trial as defined in Federal Rule of Civil Procedure 32(a)(3), the Court expects use of oral or videotape depositions at trial of any witness whose testimony a party believes essential to the presentation of that party's case, whether that witness is a party, a non-party or an expert. The unavailability of any such witness will not be a ground to delay the commencement or progress of an ongoing trial. In the event a deposition is to be offered, the offering party shall file with the Court, prior to the commencement of the trial, a copy of the deposition transcript, but only after all efforts have been made to resolve objections with other counsel. Unresolved objections shall be noted in the margin of the deposition page(s) where a Court ruling is necessary

14. Http://www.paed.uscourts. gov/documents/procedures/prapol.pdf

and a covering list of such objections is also required.

14. The parties shall meet to prepare a complete and comprehensive stipulation of uncontested facts pursuant to Local Rule of Civil Procedure 16.1(d)(2)(b)(2). Two (2) copies of such stipulation shall be submitted to the Court (Chambers, Room 7614) at least three (3) days before the case appears on the trial pool list. The original shall be filed with the Clerk of the Court.

15. Unless the Court requires otherwise, at least three (3) days before the case appears on the trial pool list, each party shall submit to the Court (Chambers, Room 7614) two (2) copies of (a) proposed jury voir dire questions, (b) proposed jury instructions with *pinpoint* citations of authority for each point (ONE POINT PER PAGE), (c) proposed jury interrogatories, (d) motions in limine (excepting *Daubert* motions), and (e) a trial memorandum on the legal issues involved in the case. The originals shall be filed with the Clerk of the Court.

If a model jury instruction taken, for instance, from O'Malley, Grenig & Lee, *Federal Jury Practice and Instructions,* or Sand, *Modern Federal Jury Instructions* is submitted, the parties shall state whether the proposed jury instruction is unchanged or modified. If a party modifies a model jury instruction the modification shall be set with additions underlined and deletions placed in brackets.

16. At least three (3) days before the case appears on the trial pool list, the parties shall submit to the Court (Chambers, Room 7614) a joint written statement of the case for reading to the jury at the commencement of the trial which shall cover (a) a brief statement of the facts; (b) a brief statement of plaintiff's cause(s) of action *and the essential elements of each cause of action;* and, (c) a brief statement

of the defense(s) *and the essential elements of each affirmative defense.* The statement of the case should not exceed two (2) pages in length.

17. At the commencement of trial, counsel are to supply the Court with two (2) copies of each exhibit, and three (3) copies of a schedule of exhibits which briefly describes each exhibit.

18. All counsel are urged to review the Court's General Policies and Procedures available on the Court's website at *www. paed.uscourts.gov* concerning the conduct of the trial. Any counsel desiring a hard copy of this document may call the Court's Civil Deputy, Ms. Rose A. Barber at 267–299–7350, to request a copy.

19. All counsel shall take such steps and undertake such procedures and processes so as to assure their use in this case of the electronic docketing and document availability and retrieval systems available from the Court.